STATE OF NORTH CAROLINA v. BENJAMIN ALBERT, JR.

No. 104

(Filed 5 May 1981)

**Criminal Law § 62— polygraph test—recross examination invited by direct testimony**

The trial court did not err in permitting the State on recross examination to ask defendant about his taking of a polygraph test, since defendant opened the door for such evidence on direct examination, and the trial court sustained defendant's objection to the questions concerning the polygraph examination so that defendant was not prejudiced by the questions.

DEFENDANT appeals from judgment of *Hobgood (Robert H.)*, *J.*, entered at the 12 September 1980 Session of CUMBERLAND Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with one count of first degree murder and one count of armed robbery. The State alleged that on 17 March 1979 in Cumberland County defendant murdered John Willie Cook and robbed him of $20 in money.

The State's evidence tends to show that immediately before his death, John Willie Cook was forty years of age, in good health and employed as a construction worker. On Friday, 16 March 1979, he cashed his paycheck and at 7:15 p.m., accompanied by his nephew, visited several nightclubs. The nephew, James Alfred Kelley, testified he last saw his uncle at 11:30-11:45 p.m. at a club on the Wilmington Road and that his uncle had money at that time. John Willie Cook was dressed in a light brown hat, brown pants and a brown leather jacket and was carrying a wallet.

At approximately 6:15 on the morning of 17 March 1979, John Willie Cook was discovered lying some 30 to 35 feet from Highway 87. He had been severely beaten and apparently robbed. He was taken to Cape Fear Valley Hospital where he subsequently died of injuries to the brain and a skull fracture resulting from blows to the head.

Pursuant to a plea bargain arrangement, Joey Vereen testified for the State. Vereen said he met defendant at Bellamy's Club on the evening of 16 March 1979 and later had a conversation with defendant in which defendant inquired if Vereen had "really ever hit anybody." Later that evening, as Vereen and defendant walked up Highway 87, they encountered John Willie Cook. Defendant grabbed Cook from behind and demanded his money. Defendant then pushed Cook toward an old house near the road where the victim began to run. Defendant chased the victim around the house. The chase ended when defendant picked up a "two-by-four" and struck Cook on the back of the head. After Cook fell, defendant found the victim's wallet and removed the money. Thereafter, he directed Vereen to return to the scene and remove the victim's coat. Vereen did so and delivered it to defendant's neighbor pursuant to defendant's instructions.

Moddie Bell West and her daughter testified that defendant admitted to them that he had hit a man.

Annie Sumpter Jones and her son testified they lived next door to defendant and he stayed in their home for several days

after the murder of Cook. While there, defendant admitted to each of them that he had hit a man with a stick and taken $500 from him. Both these witnesses testified that defendant was wearing a brown leather jacket after the murder, identified as State's Exhibit No. 26, which the victim was wearing on the night before the murder.

Testifying in his own behalf, defendant said he was twenty-six years of age, was living in Fayetteville on 17 March 1979, and at that time was on probation for insurance fraud. He testified that on 16 March 1979 he was employed at a used-car lot on Murchison Road in Fayetteville where he worked on the job until 6:30 or 7 p.m. on that date and then went to a friend's home, where he spent the night. On 17 March 1979, he again worked all day at his job and at approximately 8 or 8:30 p.m. that evening got into an altercation with two men. He denied killing or participating in the murder of John Willie Cook. He denied telling anyone he had robbed a man. He admitted a previous felony conviction for insurance fraud and admitted he fled Cumberland County in violation of the conditions of his probationary sentence.

The capital charge was submitted to the jury on the theory of felony murder, i.e., murder committed in the perpetration of a robbery. The jury convicted defendant of first degree murder on that theory and recommended life imprisonment. Judgment was pronounced accordingly and defendant appealed.

*Rufus L. Edmisten, Attorney General, by J. Michael Carpenter, Assistant Attorney General, for the State.*

*Owen W. Cook, attorney for defendant appellant.*

HUSKINS, Justice.

Defendant's sole assignment of error is directed to the action of the trial court in denying his motion for a mistrial.

The motion for a mistrial is based on the following exchange between defendant and the prosecuting attorney during recross examination of defendant:

Q. Mr. Albert, you answered all the questions of the officers, right?

A. Yes.

Q. And you told them you would be willing to take a polygraph examination?

A. Yes, sir.

Q. In fact, you did take a polygraph examination, didn't you?

A. Yes, I did.

Q. And you failed it, didn't you?

MR. COOK [defense counsel]: Objection.

A. I don't know.

COURT: Sustained. This is on recross.

Shortly thereafter, in the absence of the jury, defendant moved for a mistrial which was denied by the trial court. This constitutes the basis for defendant's sole assignment of error.

Defendant contends the questions posed to defendant on recross examination by the prosecuting attorney concerning a polygraph examination were so highly prejudicial that, even though the trial court sustained an objection thereto, the mere asking of the questions was so prejudicial as to deprive defendant of a fair trial. On the other hand, the State contends (1) that the questions were competent because defendant had previously opened the door and (2) if found to be incompetent, the court sustained defendant's objection thereto and no prejudice has resulted.

The record reveals that defendant on *direct* examination was asked the following question by his attorney and gave the following answer:

Q. As part of the statement that you gave to the officers as you came back from Charlotte did you tell them that you would be willing to take a lie detector test?

A. Yes, I did.

It is the rule in North Carolina that the results of a polygraph examination are not admissible in evidence absent a valid stipulation by the parties. *State v. Milano*, 297 N.C. 485, 256 S.E. 2d 154 (1979); *State v. Brunson*, 287 N.C. 436, 215 S.E. 2d 94

(1975); *State v. Foye*, 254 N.C. 704, 120 S.E. 2d 169 (1961). Thus, questions concerning the results of a polygraph test that was not the subject of a pretrial stipulation are generally not permitted unless defendant himself has opened the door.

Here, defendant on direct examination had testified that he told the officers he would be willing to take a lie detector test. This testimony, unexplained, could well lead the jury to believe that the State had refused to give defendant such a test, or that defendant had taken the test with favorable results which the State had suppressed. Under such circumstances, the law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially. *State v. Patterson*, 284 N.C. 190, 200 S.E. 2d 16 (1973); *State v. Black*, 230 N.C. 448, 53 S.E. 2d 443 (1949).

The following language from *State v. Small*, 301 N.C. 407, 436, 272 S.E. 2d 128, 146 (1980), is controlling on this point:

> Here on direct examination defendant testified in such a way as to leave the false impression that the state had refused to accept his offer to submit to a polygraph examination. It was proper for the state, therefore, on cross-examination to show that, in fact, defendant had been given a polygraph. The state was not, however, required to stop there. Had it done so, the jury might have been left with the impression that the state, bearing the burden of proof, did not offer the results of the polygraph because they were unfavorable to it. Both the state and the defendant are entitled to a fair trial. Defendant by first injecting the subject of the polygraph into the trial in a manner designed to mislead the jury invited the very cross-examination of which he now complains.

The evidence the State sought to elicit concerning the polygraph examination was competent because the defense had opened the door for such evidence.

In any event, the trial court sustained defendant's objection to the questions concerning the polygraph examination. This rul-

ing was favorable to defendant and certainly results in no prejudice to him.

For the reasons stated we hold that the challenged cross-examination was not prejudicial to defendant. Evidence of defendant's guilt seems overwhelming. No prejudicial error having been shown, the verdict and judgment must be upheld.

No error.