IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-60

 No. COA20-805

 Filed 1 February 2022

 Durham County, No. 16 CRS 60307

 STATE OF NORTH CAROLINA

 v.

 DAVID MCKOY

 Appeal by defendant from judgment entered 22 March 2019 by Judge John M.

 Dunlow in Durham County Superior Court. Heard in the Court of Appeals 3

 November 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General M.
 Lynne Weaver, for the State.

 Glover & Petersen, P.A., by James R. Glover, for defendant-appellant.

 ZACHARY, Judge.

¶1 Defendant David McKoy appeals from a judgment entered upon a jury’s verdict

 finding him guilty of voluntary manslaughter. On appeal, Defendant challenges the

 trial court’s exclusion of evidence found on the cell phone of the victim, Augustus

 Brandon. After careful review, we conclude that Defendant received a fair trial, free

 from prejudicial error.

 Background

¶2 The testimony offered at Defendant’s trial revealed that Defendant and
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

 Augustus Brandon had an acrimonious relationship. They had known each other

 since they were in sixth grade, and they had many mutual acquaintances. However,

 Defendant “tried to avoid” Mr. Brandon because Defendant “knew [Mr. Brandon and

 his friends] to rob people” and “to gang bang and to tote guns[.]” After one of Mr.

 Brandon’s friends “robbed [Defendant’s friend] at gunpoint for [a] fake chain,”

 Defendant purchased a semi-automatic rifle for the purposes of self-defense.

 Defendant kept this firearm in the back seat of his car because his mother would not

 allow him to keep it in the house.

¶3 Defendant testified that on the morning of 9 December 2016, he was waiting

 to turn left onto Hamlin Road when he saw Mr. Brandon drive past him. According

 to Defendant, as Mr. Brandon drove by, he “turn[ed] his head . . . like he had spotted

 [Defendant].”

¶4 Defendant turned onto Hamlin Road behind Mr. Brandon, who pulled off the

 road and then merged back onto it so that he was following Defendant. Defendant

 tried unsuccessfully to lose Mr. Brandon by turning onto Old Oxford Road. Mr.

 Brandon then passed Defendant, maneuvered his vehicle in front of Defendant’s, and

 abruptly came to a complete stop in the roadway. When Mr. Brandon exited his car

 and started approaching Defendant’s car, Defendant put his car in reverse and

 accidentally backed into a side ditch, where his vehicle got stuck. Mr. Brandon then

 turned his car around, drove nearer to Defendant’s car, got back out of the car, and
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

 began approaching Defendant.

¶5 Defendant explained that at the time he “was terrified” because he believed

 that Mr. Brandon was going to shoot him; he stated, “I just panicked. I just panicked.”

 Although he did not see Mr. Brandon brandish a gun, Defendant “was in fear for [his]

 life[,]” so he fired his semi-automatic rifle. Defendant believed that Mr. Brandon had

 returned fire, so he continued shooting. Defendant fired his weapon three times,

 hitting Mr. Brandon once in the middle of the back and once in the back of the head.

 The head wound was fatal.

¶6 By the time law enforcement officers arrived at the scene, Mr. Brandon was

 dead. He was unarmed.

¶7 That day, law enforcement officers arrested Defendant for the murder of Mr.

 Brandon. On 17 January 2017, a Durham County grand jury returned an indictment

 formally charging Defendant with the murder of Augustus Brandon. From the outset,

 Defendant consistently maintained that he acted in self-defense against Mr.

 Brandon.

¶8 This matter came on for trial in Durham County Superior Court on 11 March

 2019. Three eyewitnesses to the shooting testified on behalf of the State. Two of the

 witnesses reported that they had heard approximately three gunshots on 9 December

 2016, while the third stated that he heard six to seven shots. One witness testified

 that Mr. Brandon was running away when Defendant shot him, with the force of the
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

 shots “launch[ing]” his body into the roadside ditch.

¶9 Mr. Brandon’s mother, Angela Clark, also testified for the State. She said that

 a few days before the shooting, Mr. Brandon admitted to her that he had previously

 been in possession of a gun, but he had recently been robbed and the gun was taken

 from him. “He just kept asking” Mrs. Clark if she could help him get another, telling

 her, “I need it for protection, because they’re going to kill me.”

¶ 10 During the jury charge, the trial court delivered instructions on first-degree

 murder, second-degree murder, and voluntary manslaughter. With regard to

 voluntary manslaughter, the court instructed the jury, in relevant part:

 If you find from the evidence beyond a reasonable doubt
 that on or about the alleged date the defendant
 intentionally wounded the victim with a deadly weapon
 and thereby proximately caused the victim’s death and
 that the defendant used excessive force, it would be your
 duty to find the defendant guilty of voluntary
 manslaughter, even if the [S]tate has failed to prove that
 the defendant did not act in self-defense.

¶ 11 On 22 March 2019, the jury returned its verdict finding Defendant guilty of

 voluntary manslaughter. The trial court entered judgment upon the jury’s verdict

 and sentenced Defendant to a term of 64 to 89 months in the custody of the North

 Carolina Division of Adult Correction. Defendant gave notice of appeal in open court.

 Discussion

 I. Exclusion of Evidence
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

¶ 12 During trial, the State filed a motion in limine to suppress Defendant’s

 anticipated introduction of (1) text messages on Mr. Brandon’s cell phone in which he

 arranged to commit violent acts and discussed owning and using guns, and (2)

 photographs on Mr. Brandon’s cell phone of him and others holding guns. The State

 asserted that such evidence would be more prejudicial than probative because specific

 acts of conduct are impermissible to prove a victim’s propensity for violence, and

 because such evidence could suggest that Mr. Brandon “had a violent character.” The

 State also argued that the evidence was inadmissible because Defendant did not

 know about the texts or photographs at the time of the shooting. Defense counsel

 argued that although Defendant did not learn of the texts and photographs until

 discovery, Mr. Brandon’s “parents . . . [w]ere going to talk about their son,” and

 therefore the cell-phone evidence was necessary “to paint the whole picture.” The

 defense further argued that the State “opened the door” to challenges to Mr.

 Brandon’s character because his parents testified that he “was always a happy guy.”

¶ 13 In addition, defense counsel conducted a voir dire examination of Darius Clark,

 Mr. Brandon’s father, during which Mr. Clark denied knowing anything about his

 son owning or using guns. To impeach Mr. Clark’s testimony, Defendant’s counsel

 sought to question him about a recorded interaction between the Clarks and the lead

 detective, Christin Reimann, in which they reviewed together the contents of Mr.

 Brandon’s cell phone.
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

¶ 14 The trial court granted the State’s motion in limine, explaining, “This is [the

 S]tate’s case in chief, . . . so any question relative to the contents of that phone and

 text messages that may or may not have been contained on that phone is not allowed.”

 The trial court permitted Defendant “to ask questions relating to whether [Mr. Clark]

 knew that the victim had a gun” because he “had previously testified that [Mr.

 Brandon] did not have a gun, [and] there were no guns allowed in his house”; the

 court also allowed defense counsel to question Mr. Clark about the fact of his

 encounter with Detective Reimann, during which she showed Mr. Clark and his wife

 the contents of Mr. Brandon’s cell phone. However, the trial court instructed

 Defendant that he could not ask Mr. Clark “specific questions about th[e] contents”

 of the cell phone for the purposes of impeachment. The court later sustained the

 State’s objections when Defendant asked Mr. Clark and Detective Reimann about the

 contents of Mr. Brandon’s cell phone.

 II. Standard of Review

¶ 15 On appeal, Defendant argues that the trial court erred in excluding the specific

 content discovered on Mr. Brandon’s cell phone. Specifically, Defendant contends that

 the issue is whether the State “opened the door” to admission of the cell-phone

 evidence to refute the portrayal of Mr. Brandon in his parents’ testimony, and to

 impeach Mr. Clark’s testimony that he did not previously know that his son had once

 possessed a gun or been robbed. Defendant asserts that this is a question of law,
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

reviewable de novo on appeal.1

 1 Defendant contends that “[w]hether a party opened the door to the admission of

particular evidence by the opposing party is a question of law,” which is reviewable de novo
on appeal. For support, Defendant cites State v. Jefferies, 333 N.C. 501, 511, 428 S.E.2d 150,
155 (1993); however, such reliance on Jefferies is misplaced. First, although the standard of
review in Jefferies was not explicitly stated, nowhere in the opinion did our Supreme Court
suggest de novo review. See id. Indeed, among the cases cited in Jefferies is State v. Brown,
in which our Supreme Court affirmed this Court’s application of the abuse of discretion
standard when determining whether the trial court erred in concluding that the defendant
had “opened the door” to evidence of his prior bad acts. 310 N.C. 563, 571–73, 313 S.E.2d 585,
590–91 (1984).
 Defendant’s reliance on Jefferies is further unwarranted because the facts here are
not analogous to those in Jefferies. In Jefferies, the defendant sought to question a detective
on cross-examination specifically about the detective’s testimony for the State that charges
had also been filed against the defendant’s alleged co-conspirator. 333 N.C. at 511, 428 S.E.2d
at 155. The State offered the detective’s testimony to support its theory that the men had
acted in concert; accordingly, on cross-examination, the defendant hoped to rebut this
evidence by eliciting testimony that the charges against his co-conspirator had been
dismissed. Id. However, the trial court did not allow the defendant to question the detective
regarding the dismissed charges, and it excluded from evidence documents showing that the
charges had been dismissed. Id. On appeal, our Supreme Court stated the well-established
rule that “[w]hen a party introduces evidence favorable to its case, the other party has the
right to introduce evidence to explain or rebut such evidence, although the latter evidence
would be inadmissible had it been offered initially.” Id. The Court explained that “[a]ssuming
the evidence which the defendant attempted to introduce would have been inadmissible if
offered originally, it became admissible when the State’s witness testified on this subject. It
was error to exclude this evidence.” Id. The Court nonetheless concluded that the error was
harmless, reasoning that there was no “reasonable possibility” that a different result would
have been reached at trial even if the error had not occurred. Id. at 511–12, 428 S.E.2d at
155–56.
 Here, Defendant attempted to introduce the evidence on Mr. Brandon’s cell phone to
rebut Mr. Clark’s claimed ignorance about his son’s use of guns and his statement that Mr.
Brandon “was always a happy guy.” Unlike in Jefferies—where the defendant’s proffered
evidence regarding the dismissed charges would have provided relevant context to help
“explain or rebut” the State’s potentially unfavorable evidence concerning a co-conspirator,
id. at 511, 428 S.E.2d at 155—here, Mr. Clark’s knowledge of his son’s prior possession of
guns and his characterization of Mr. Brandon’s overall demeanor are not directly related to
Mr. Brandon’s alleged propensity for violence.
 Accordingly, Defendant’s contention that Jefferies mandates de novo review of this
issue lacks merit.
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

¶ 16 However, the record indicates otherwise. The State argued that the cell-phone

 evidence would impermissibly suggest—through specific acts of which Defendant

 only learned after the fact—that Mr. Brandon possessed “a violent character.” Based

 on this argument, the trial court decided that Defendant could ask Mr. Clark general

 “[q]uestion[s] about whether or not [Detective] Reimann showed him and his wife the

 contents of Mr. Brandon’s cell phone, but not specific questions about those

 contents[.]” In doing so, the court engaged in the evidentiary balancing test prescribed

 by Rule 403 of the North Carolina Rules of Evidence. See N.C. Gen. Stat. § 8C-1, Rule

 403 (2021) (“Although relevant, evidence may be excluded if its probative value is

 substantially outweighed by the danger of unfair prejudice, confusion of the issues,

 or misleading the jury . . . .”).

¶ 17 Accordingly, the ultimate question on appeal is whether the trial court abused

 its discretion by excluding the cell-phone evidence, not whether the State “opened the

 door” to evidence of Mr. Brandon’s allegedly violent character.

¶ 18 A motion in limine “can be made in order to prevent the jury from ever hearing

 the potentially prejudicial evidence thus obviating the necessity for an instruction

 during trial to disregard that evidence if it comes in and is prejudicial.” State v. Tate,

 300 N.C. 180, 182, 265 S.E.2d 223, 225 (1980). “The decision of whether to grant [a

 motion in limine] rests in the sound discretion of the trial judge.” State v. Hightower,

 340 N.C. 735, 746–47, 459 S.E.2d 739, 745 (1995). Additionally, “[w]e review a trial
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

 court’s decision to exclude evidence under Rule 403 for abuse of discretion.” State v.

 Whaley, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008).

¶ 19 “An abuse of discretion results when the court’s ruling is manifestly

 unsupported by reason or is so arbitrary that it could not have been the result of a

 reasoned decision.” State v. Triplett, 368 N.C. 172, 178, 775 S.E.2d 805, 809 (2015)

 (citation and internal quotation marks omitted). “In our review, we consider not

 whether we might disagree with the trial court, but whether the trial court’s actions

 are fairly supported by the record.” Id. (citation and internal quotation marks

 omitted).

¶ 20 “[E]videntiary error does not necessitate a new trial unless the erroneous

 admission was prejudicial. The same rule applies to exclusion of evidence.” State v.

 Jacobs, 363 N.C. 815, 825, 689 S.E.2d 859, 865 (2010) (citations and internal

 quotation marks omitted). A defendant is prejudiced by evidentiary error “when there

 is a reasonable possibility that, had the error in question not been committed, a

 different result would have been reached at the trial out of which the appeal arises.”

 Id. (quoting N.C. Gen. Stat. § 15A-1443(a)). “Defendant bears the burden of showing

 prejudice.” Id. at 825, 689 S.E.2d at 866.

 III. Analysis

¶ 21 Here, Defendant contends that “[i]t was error for the trial court to bar any

 evidence of what [Mr. Brandon] kept on his cell phone to rebut the misleading picture
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

 presented to the jury by the State.” Defendant further asserts that he was prejudiced

 by the exclusion of this evidence because:

 [i]f the jury had been allowed to hear that [Mr.] Brandon
 was not a person who only briefly had access to a gun and,
 instead, was a person who had possession of guns on
 multiple occasions when under no threat of harm, it would
 have been reasonable for the jury to conclude that the State
 had failed to prove beyond a reasonable doubt that
 [Defendant] used more force [than] reasonably necessary
 to repel [Mr.] Brandon’s lethal attack on him.

¶ 22 Assuming, arguendo, that the cell-phone evidence was excluded in error, such

 error was not sufficiently prejudicial to warrant a new trial. Defendant has not shown

 “a reasonable possibility that, had the error in question not been committed, a

 different result would have been reached at the trial out of which the appeal arises.”

 Id. at 825, 689 S.E.2d at 865.

¶ 23 In the instant case, the trial court admitted substantial evidence supporting

 Defendant’s theory of self-defense. Defendant testified that Mr. Brandon and his

 friends had a reputation for “rob[bing] people,” “gang bang[ing,] and . . . tot[ing]

 guns”; that Mr. Brandon had once “randomly showed [Defendant] a video of [Mr.

 Brandon] shooting a gun[,]” an experience that made Defendant feel “confused and

 uncomfortable”; that Defendant “was terrified” and “in fear for [his] life” at the time

 of the shooting; and that he thought he heard more than three gunshots, as one of the

 eyewitnesses also testified. Additionally, Mrs. Clark testified that a few days before
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

 the shooting, her son had admitted that he had previously had a gun, but it had been

 stolen, and he needed assistance obtaining another. A challenge to Mr. Clark’s

 credibility with the texts and photographs on Mr. Brandon’s cell phone, therefore,

 would not have meaningfully bolstered Defendant’s self-defense claim.

¶ 24 Furthermore, the evidence tended to show that Defendant was honestly in fear

 for his life, but that the degree of force he used was unreasonable, as Mr. Brandon

 was unarmed and running away from Defendant when he was killed. The trial court’s

 instruction on voluntary manslaughter allowed the jury to convict Defendant upon a

 finding of imperfect self-defense. As Defendant concedes, the guilty verdict suggests

 “that the jury concluded that [Defendant] had a reasonable fear that he was facing

 an imminent threat of death or great bodily injury from [Mr.] Brandon at the time of

 the shooting, but that the State had proven beyond a reasonable doubt that he used

 more force than necessary.”

¶ 25 Moreover, as Defendant acknowledges, he testified at trial that he never saw

 Mr. Brandon holding or handling a gun on 9 December 2016; nevertheless, he

 contends that, had the trial court not erroneously excluded the evidence discovered

 on Mr. Brandon’s cell phone, “there is more than a reasonable possibility that the jury

 would have reached a verdict other than guilty of voluntary manslaughter.”

 Defendant’s argument is unavailing.

¶ 26 The only additional evidence Defendant proffers in support of his argument on
 STATE V. MCKOY

 2022-NCCOA-60

 Opinion of the Court

 appeal is his own testimony that “he heard gunshots in addition to the three he fired

 and believed [Mr.] Brandon had fired at him.” However, as noted above, the jury

 heard and considered this testimony, as well as that of an eyewitness who similarly

 recalled hearing more than the three gunshots reported by two other testifying

 eyewitnesses. The jury, as fact-finder in this matter, weighed all of the evidence and,

 presented with four possible verdicts, found Defendant guilty of the lowest-level

 offense. Even assuming, arguendo, that the relevant evidence was erroneously

 excluded, we are not persuaded that the challenged evidentiary ruling affected the

 outcome at trial. Accordingly, Defendant has not shown “a reasonable possibility that,

 had the error in question not been committed, a different result would have been

 reached at the trial out of which the appeal arises.” Id.

¶ 27 For these reasons, we conclude that Defendant received a fair trial, free from

 prejudicial error.

 NO PREJUDICIAL ERROR.

 Judge ARROWOOD concurs.

 Judge TYSON dissents by separate opinion.
 No. COA20-805 – State v. McKoy

 TYSON, Judge, dissenting.

¶ 28 David McKoy (“Defendant”) appeals from a judgment entered upon a jury’s

 verdict finding him guilty of voluntary manslaughter. Defendant challenges the trial

 court’s limitation on his cross-examination of the State’s witnesses and the exclusion

 of evidence and images found on the cell phone of the deceased, Augustus Brandon

 (“Brandon”). Defendant is entitled to a new trial. I respectfully dissent.

¶ 29 The jury concluded the State had failed to carry its burden to show

 premeditation and deliberation, and acquitted Defendant of both first-degree and

 second-degree murder. The jury also rejected Defendant acted with malice and

 accepted Defendant’s evidence of self-defense to rebut the presumption of malice

 arising from his use of deadly force. See State v. Reynolds, 307 N.C. 184, 192, 297

 S.E.2d 532, 537 (1982) (“In the instant case the state offered evidence sufficient to

 permit a jury to find beyond a reasonable doubt that defendant intentionally used a

 deadly weapon, a pistol, to cause the death of the deceased. There is no evidence of

 mitigation which might reduce the crime to manslaughter nor is there any evidence

 which would justify or excuse the killing. Under these circumstances the state has

 proved murder in the second degree because malice and unlawfulness are implied in

 law.”).

 I. Reasonable Use of Force

¶ 30 The sole issue remaining for the jury was whether Defendant’s use of deadly

 force in self-defense was reasonable. The burden of proof rests upon the State and
 STATE V. MCKOY

 2022-NCCOA-60

 Tyson, J., dissenting

 the evidence is reviewed in the light most favorable to Defendant, as it appeared to

 him at the time of the incident. See State v. Mash, 323 N.C. 339, 348, 372 S.E.2d 532,

 537 (1988) (“When determining whether the evidence is sufficient to entitle a

 defendant to jury instructions on a defense . . . , courts must consider the evidence in

 the light most favorable to [the] defendant.” ) (citations omitted).

 A. Opening the Door

¶ 31 Defendant asserts prejudicial error in the exclusion of evidence favorable to

 him and argues the State “opened the door” to the admission of the photos and texts

 after the detective’s and Brandon’s parents’ testimonies on direct examination.

 “‘Opening the door’ is the principle where one party introduces evidence of a

 particular fact and the opposing party may introduce evidence to explain or rebut it,

 even though the rebuttal evidence would be incompetent or irrelevant, if offered

 initially.” State v. Thaggard, 168 N.C. App. 263, 273, 608 S.E.2d 774, 782 (2005)

 (citation omitted).

¶ 32 Defendant asserts he is entitled to introduce evidence to explain or rebut

 evidence or assertions presented by the State. See State v. Jefferies, 333 N.C. 501,

 511, 428 S.E.2d 150, 155 (1993) (“When a party introduces evidence favorable to its

 case, the other party has the right to introduce evidence to explain or rebut such

 evidence, although the latter evidence would be inadmissible had it been offered

 initially.”); see State v. Albert, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981) (“Under
 STATE V. MCKOY

 2022-NCCOA-60

 Tyson, J., dissenting

 such circumstances, the law wisely permits evidence not otherwise admissible to be

 offered to explain or rebut evidence elicited by the [opposing party]. Where one party

 introduces evidence as to a particular fact or transaction, the other party is entitled

 to introduce evidence in explanation or rebuttal thereof, even though such latter

 evidence would be incompetent or irrelevant had it been offered initially.”) (emphasis

 supplied) (citation omitted).

¶ 33 The State opened the door through the detective’s and Brandon’s parents’

 testimonies that asserted Brandon’s (1) lack of possession and use of guns; (2) no

 involvement in gang activities; (3) reputation for peacefulness; and, (4) being

 characterized as “always a happy guy.”

 B. Right to Present a Defense

¶ 34 Defendant further argues the trial court’s denial of cross-examination and

 inability to introduce evidence is a constitutional violation and impacts his due

 process right to present a defense:

 The right to offer the testimony of witnesses, and to compel
 their attendance, if necessary, is in plain terms the right to
 present a defense, the right to present the defendant’s
 version of the facts as well as the prosecution’s to the jury
 so it may decide where the truth lies. Just as an accused
 has the right to confront the prosecution’s witnesses for the
 purpose of challenging their testimony, he has the right to
 present his own witnesses to establish a defense. This right
 is a fundamental element of due process of law.
 STATE V. MCKOY

 2022-NCCOA-60

 Tyson, J., dissenting

 Washington v. Texas, 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023 (1967) (emphasis

 supplied).

¶ 35 When a defendant asserts the defense of self-defense, he is entitled for the trial

 court and jury to view the evidence “in the light most favorable to the defendant.”

 State v. Moore, 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010). In the light most

 favorable to Defendant, the evidence tended to show Defendant had been bullied and

 threatened by Brandon prior to the shooting. Defendant was followed and cornered

 by Brandon on a roadway. Brandon got out of the car and approached Defendant.

 Defendant testified he thought he was being threatened and ducked down, while

 backing his car away from Brandon and into a ditch. Defendant testified Brandon

 had been shooting at him and he had heard gun shots. This evidence was

 corroborated by other witnesses.

¶ 36 Defendant testified he was afraid when Brandon went back towards his car.

 Brandon pulled his car over to Defendant and Defendant shot at Brandon through

 his own car window. Defendant crouched behind his car and fired additional shots.

 Defendant himself called 911 and surrendered to police. Defendant has no prior

 criminal record.

¶ 37 Defendant attempted to introduce evidence of Brandon’s reputation for

 violence, as corroborated by violent and graphic gang and gun images of Brandon that

 he had stored on his cell phone. Defendant also sought to cross-examine and use the
 STATE V. MCKOY

 2022-NCCOA-60

 Tyson, J., dissenting

 phone images to rebut Brandon’s parents, Mr. and Mrs. Clark’s, claimed ignorance

 about their son’s possession and use of guns, his gang activity, and their assertion of

 Brandon’s reputation for peacefulness and that he “was always a happy guy.”

¶ 38 The State objected. On the next day of court, the State filed motion in limine

 to prevent use of these texts and images citing State v. Bass, 371 N.C. 535, 819 S.E.2d

 322 (2018). After a voir dire hearing, the trial court granted the State’s motion. The

 trial court sustained the State’s objections when defense counsel attempted to cross-

 examine Brandon’s father about a photo showing Brandon holding firearms, after the

 father had denied his son had ever possessed a gun.

¶ 39 Later, Detective Riemann testified for the State and mentioned she had gone

 through the contents of Brandon’s phone. Detective Riemann testified she did not

 recall all the photos she may have looked at on the phone. Defense counsel attempted

 to cross-examine the detective regarding images and the phone’s contents. The trial

 court sustained the State’s objection.

¶ 40 While North Carolina’s courts recognize and protect the right to wide-ranging

 cross examination, “the defendant’s right to cross-examination is not absolute. The

 testimony which defendant sought to elicit must be relevant to some defense or

 relevant to impeach the witness.” State v. Guthrie, 110 N.C. App. 91, 93, 428 S.E.2d

 853, 854 (citation omitted), rev. denied, 333 N.C. 793, 431 S.E.2d 28 (1993).
 STATE V. MCKOY

 2022-NCCOA-60

 Tyson, J., dissenting

¶ 41 The State never addresses the issue on appeal of whether it opened the door to

 admit this testimony, does not address the constitutional implications of Defendant’s

 right to present a defense or his knowledge Brandon was violent and known to carry

 a gun. Even though the State relied upon State v. Bass at the trial court for the basis

 of its motion in limine, the State does not cite Bass to support its arguments on

 appeal.

 C. State v. Bass

¶ 42 Our Supreme Court’s holding in Bass does not control the outcome this case.

 In Bass, the court found no error where the defendant was denied the opportunity to

 offer witnesses testifying to past violent acts of the victim. Bass, 371 N.C. at 545, 819

 S.E.2d at 328. Here, Defendant argues the State opened the door regarding the

 contents and images stored on Brandon’s phone and by the State’s witnesses

 affirmatively asserting Brandon’s good character. Defendant asserts the denial of his

 right to cross-examine and present evidence to support the reasonableness of his

 actions denied him his due process right to present a defense. Bass does not address

 specific acts or corroborating evidence offered to impeach the State’s witnesses’

 testimony about a victim’s character for violence.

¶ 43 Here, the jury had already acquitted Defendant on first and second-degree

 murder. Defendant’s evidence rebutted the presumption of malice arising from the

 use of a deadly weapon. Reynolds, 307 N.C. at 192, 297 S.E.2d at 537.
 STATE V. MCKOY

 2022-NCCOA-60

 Tyson, J., dissenting

¶ 44 The sole remaining question for the jury was whether the Defendant’s use of

 deadly force was reasonable, as reviewed in the light most favorable to Defendant

 under the facts as appeared to him at the time. The burden rested upon the State to

 show it was not.

¶ 45 Defendant’s apprehension and belief at the time of the incident determines the

 degree of force necessary to use for self-defense. See State v. Bush, 307 N.C. 152, 160,

 297 S.E.2d 563, 569 (1982). The evidence is certainly relevant and corroborative of

 Brandon’s reputation for violence, gang involvement use of guns, and as

 impeachment of Brandon’s father’s testimony asserting Brandon’s peaceful

 character.

¶ 46 Defendant had testified he was followed and cornered by Brandon, who

 abruptly pulled in front of his vehicle and came to a dead stop in the roadway.

 Defendant testified he heard gun shots and believed Brandon had been shooting at

 him. Brandon got out of the car and approached Defendant, who felt threatened and

 backed up his vehicle into a ditch. Brandon pulled his car over to Defendant and got

 out. Defendant shot at Brandon from inside his own car window. Defendant testified

 he was afraid and believed Brandon went back towards his car to further arm himself.

 II. Conclusion

¶ 47 Defendant was convicted of voluntary manslaughter for imperfect self-defense

 because the jury found his degree of force was unreasonable. The impeachment
 STATE V. MCKOY

 2022-NCCOA-60

 Tyson, J., dissenting

 evidence goes towards Defendant’s state of mind and reasonableness of fear during

 the incident. There is a reasonable possibility if this evidence and testimony had not

 been excluded, and this error not been committed at trial, a different result may have

 been reached by the jury, in light of their acquittals on the murder charges and

 rejection of presumed malice. See N.C. Gen. Stat. § 15A-1443(a) (2021).

¶ 48 The trial court’s limitations on cross-examination and exclusion of

 corroborating evidence, after the State had opened the door, unlawfully eased the

 State’s burdens of proof and to overcome self-defense. Defendant was prejudiced in

 his defense and is entitled to a new trial. I respectfully dissent.