TYSON, Judge.
*756 Justin Deandre Bass ("Defendant") appeals from his jury conviction of assault with a deadly weapon inflicting serious injury. We find reversible errors in the trial and grant Defendant a new trial.
I. Background
A. Previous Altercation
1. Fogg's Version
Defendant and Jerome Fogg engaged in an altercation on the evening of 23 June 2014, at the Bay Tree Apartments in Raleigh, where Defendant lived with his mother. Fogg claimed Defendant had kept "running his mouth," looking at Fogg, who weighed 240 pounds at the time, and saying "that big s**t don't matter." According to Fogg, Defendant claimed to a member of the Piru gang, as was Fogg, but Defendant was unable to replicate the gang's handshake.
Fogg testified Defendant continued to be "disrespectful to [Fogg]." Fogg told him to stop talking, at which point Defendant "pulled his pants up, had his hands up." Fogg believed this action meant Defendant was going to hit him or was getting ready to fight. Fogg threw the first punch and hit Defendant several times.
*757 2. Defendant's Version
Defendant also testified about the 23 June 2014 altercation. He testified Fogg approached and asked whether Defendant knew the Piru handshake. Fogg became aggressive and left when Defendant told him that he did not know the handshake. Fogg returned and was "ready to do that handshake." Fogg began punching Defendant repeatedly, after Defendant did not perform the handshake to Fogg's satisfaction.
A video of this assault was recorded on Fogg's cellphone, and was played for the jury. Fogg first punched Defendant in the nose. Fogg then dealt a blow to Defendant's left jaw from behind, which knocked Defendant to the ground. Defendant stood and tried to walk away. Fogg dealt a third blow to Defendant's right jaw, which caused Defendant, who weighed 165 pounds, to "fly through the air and roll." The video shows Defendant walking in circles with Fogg following behind him. Defendant did not swing at Fogg or say anything to provoke him. Fogg broke Defendant's jaw in three places, which required surgery and the placement of screws to repair. Defendant's jaw was wired shut.
Defendant did not contact police after this incident because he was afraid Fogg would return and beat him again. He testified he began carrying a 9mm handgun out of fear of further bodily injury or death by Fogg.
B. Defendant Shoots Fogg
1. Fogg's Version
Fogg testified he encountered Defendant at the Bay Tree apartment complex two weeks after the first altercation, on 3 July 2014. Fogg testified Defendant stated to Fogg, "he was going to pop [Fogg's] motherf***ing ass." Defendant was walking away from Fogg, and then stopped and said something else. Fogg could see something in Defendant's pocket, but he "[had never] ran from anyone," and was "not going to start running." Fogg testified Defendant pulled a gun from his pocket and shot him. Fogg stated, "You shot me motherf***er." Defendant shot Fogg again twice.
*480 2. Defendant's Version
Defendant testified he was watching fireworks with friends outside of his home at the Bay Tree apartment complex. His jaw remained wired shut from the beatings and injuries dealt by Fogg two weeks earlier. Defendant returned to building 114, where he lived on the second floor with his mother, and stood outside that building with friends for a couple of hours. Defendant was standing on the sidewalk between buildings 114 *758 and 118, when he saw a car pull into the parking lot. He saw Fogg was seated in the passenger's seat. Defendant stated he crossed the street and walked toward building 109 in order to put as much distance as possible between Fogg and himself. Defendant remained in the breezeway of building 109, pacing back and forth and "praying and hoping" that Fogg would not approach him.
Defendant saw Fogg speaking with a group of people at building 110. Fogg then began walking towards Defendant. Fogg approached Defendant in an aggressive manner, and stated, "I heard you been talking junk ... I hope you enjoy drinking the Ensure for six weeks." Defendant observed Fogg carrying a "large knife with a big handle" in a sheath attached to his pants. Defendant believed Fogg "either was going [t]o beat me up or try to cut me with the knife."
Defendant moved to the grassy area outside the breezeway because he did not want to get trapped with Fogg inside the breezeway. Fogg stated, "I said get on the concrete." Defendant did not move. Fogg questioned, "oh you ain't going to move?" Defendant pulled his gun and pointed it at Fogg. He testified he intended to scare Fogg and hoped he would leave. Fogg stated, "oh ... you wanna shoot me?" Fogg approached Defendant, while reaching for his knife. Defendant shot Fogg, panicked, and ran. Defendant testified he shot Fogg because he was "scared for [his] life."
The large knife Fogg carried that evening is included in the record on appeal. It resembles a short machete, with a wide and curved blade that is approximately ten inches long. The knife was found in its sheath located on Fogg's hip when a police officer arrived to assist Fogg.
After shooting Fogg, Defendant ran from the apartment complex and left town for Virginia for two weeks. Defendant was arrested upon his return home.
Dr. Matthew Alleman, a general surgeon who treated Fogg at the hospital, was initially concerned that Fogg might die due to the severity of his injuries. Fogg underwent multiple surgeries. He remained in the intensive care unit for approximately a month and spent an additional one or two weeks as an inpatient.
On 24 October 2014, Defendant gave the State notice that he intended to assert self-defense. On 18 November 2014, Defendant was indicted in a superseding indictment for attempted murder and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant's trial commenced on 10 December 2014.
*759 On 19 December 2014, the jury found Defendant was not guilty of attempted first-degree murder or assault with a deadly weapon with intent to kill inflicting serious injury, but found Defendant was guilty of assault with a deadly weapon inflicting serious injury. Defendant was sentenced to a minimum term of thirty months and a maximum term of forty-eight months in prison. Defendant appeals.
II. Jurisdiction
Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2015).
III. Issues
Defendant argues the trial court erred by: (1) failing to instruct the jury that Defendant had no duty to retreat before using deadly force in self-defense, and committed further error by instructing the jury that the law pertaining to whether Defendant had a duty to retreat "does not apply to this case;" (2) sustaining the State's objections to evidence of specific acts of violence committed by Fogg upon other individuals; and (3) denying Defendant's motion to continue prior to the start of trial.
*481 IV. Jury Instructions
Defendant argues the trial court erred failing to instruct the jury that he had no duty to retreat before using deadly force in self-defense, and later instructing the jury that the law pertaining to whether Defendant had no duty to retreat "does not apply to this case." We agree.
A. Standard of Review
The question of whether a trial court erred in instructing the jury is a question of law reviewed de novo . State v. Osorio , 196 N.C.App. 458, 466, 675 S.E.2d 144, 149 (2009).
B. Statutory Circumstances which Justify Use of Deadly Force
"Our courts have recognized that a defendant may use either deadly force or nondeadly force to defend himself, depending on the circumstances of each case." State v. Whetstone , 212 N.C.App. 551, 558, 711 S.E.2d 778, 783 (2011). "Deadly force is 'force intended or likely to cause death or great bodily harm[,]' and nondeadly force is 'force neither intended nor likely to do so[.]' " Id . (quoting State v. Pearson , 288 N.C. 34, 39, 215 S.E.2d 598, 602 (1975) ). Defendant does not dispute he used deadly force against Fogg.
Our statutes set forth the two circumstances in which a person is justified in using deadly force to be excused from criminal liability.
*760 N.C. Gen. Stat. § 14-51.3 is titled, "Use of force in defense of person; relief from criminal or civil liability," and provides:
(a) ... [A] person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
(2) Under the circumstances permitted pursuant to G.S. 14-51.2.
N.C. Gen. Stat. § 14-51.3(a) (2015) (emphasis supplied).
N.C. Gen. Stat. § 14-51.2 provides:
(b) The lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
(1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting to remove another against that person's will from the home, motor vehicle, or workplace.
(2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.
....
(f) A lawful occupant within his or her home, motor vehicle, or workplace does not have a duty to retreat from an intruder in the circumstances described in this section.
N.C. Gen. Stat. § 14-51.2(b) and (f) (2015) (emphasis supplied).
A person who claims self-defense clearly does not have a duty to retreat under either of the two circumstances set forth in § 14-51.3(a)(1)
*761 or § 14-51.2(b). In both circumstances, the person who uses defensive deadly force must have held a reasonable belief that the force used was necessary to prevent imminent death or great bodily harm to himself or another.
The pertinent distinction between the two statutes is that a rebuttable presumption arises that the lawful occupant of a home, motor vehicle, or workplace holds a reasonable fear of imminent death or serious bodily harm to himself or another when using defensive force at those locations under the circumstances set forth in N.C. Gen. Stat. § 14-51.2(b). Id . This rebuttable presumption does not arise in N.C. Gen. Stat. § 14-51.3(a)(1).
*482 C. Charge Conference and Preservation of Error
At the charge conference with counsel, the trial court listed the pattern jury instructions the court intended to give the jury. Included in this list was North Carolina Pattern Jury Instruction ("N.C.P.I.") 308.45. That instruction states, in pertinent part:
If the State has satisfied you beyond a reasonable doubt that the defendant assaulted the victim with deadly force (insert other lesser included assault offenses), then you would consider whether the defendant's actions are excused and the defendant is not guilty because the defendant acted in self-defense. The State has the burden of proving from the evidence beyond a reasonable doubt that the defendant's action was not in self-defense.
If the circumstances would have created a reasonable belief in the mind of a person of ordinary firmness that the assault was necessary or appeared to be necessary to protect that person from imminent death or great bodily harm, and the circumstances did create such belief in the defendant's mind at the time the defendant acted, such assault would be justified by self-defense. You, the jury, determine the reasonableness of the defendant's belief from the circumstances appearing to the defendant at the time. Furthermore, the defendant has no duty to retreat in a place where the defendant has a lawful right to be . (The defendant would have a lawful right to be in the defendant's [home] [own premises] [place of residence] [workplace] [motor vehicle].)
NOTE WELL: The preceding parenthetical should only be given where the place involved was the defendant's *762 [home] [own premises] [place of residence] [workplace] [motor vehicle].
N.C.P.I. Crim. 308.45 (2016) (emphases supplied).
N.C.P.I. 308.45 encompasses both of the circumstances set forth in N.C. Gen. Stat. § 14-51.3(a), where the defendant is justified in using deadly force and has no duty to retreat. N.C.P.I. 308.45 contains a separate "Note Well" instruction, which directs the trial court to use N.C.P.I. 308.80 ("Defense of Habitation"), if the assault occurred in the defendant's home, workplace or motor vehicle under N.C. Gen. Stat. § 14-51.2(b). N.C.P.I. 308.80 sets forth the statutory and rebuttable presumption that the lawful occupant of a home, motor vehicle, or workplace holds a reasonable fear of imminent death or serious bodily harm to himself or another when using defensive force at any of those listed places. N.C.P.I. Crim. 308.80 (2016); see N.C. Gen. Stat. § 14-51.2(b).
Defense counsel later requested the court "add the language from the pattern 308.45 which reads furthermore, the Defendant has no duty to retreat in a place where the Defendant has a lawful right to be. And the Defendant would have a lawful right to be in his place of residence." Counsel then argues whether Defendant was standing within the curtilage of his home when he shot Fogg. The trial court determined Defendant was not within the curtilage of his home, and told defense counsel, "I will not include that sentence that you asked for. I don't think that it applies in this case."
The trial court instructed the jury:
If the State has satisfied you beyond a reasonable doubt that the Defendant assaulted the victim with deadly force, then you would consider whether the Defendant's actions are excused and the Defendant is not guilty because the Defendant acted in self defense. The State has the burden of proving from the evidence beyond a reasonable doubt that the Defendant's action was not in self defense.
If the circumstances would have created a reasonable belief in the mind of a person of ordinary firmness that the assault was necessary or appeared to be necessary to protect that person from imminent death or great bodily harm, and the circumstances did create such a belief in the Defendant's mind at the time the Defendant acted, such an assault would be justified by self defense. You, the jury, determine the reasonableness of the Defendant's belief *763 from the circumstances appearing to the Defendant at the time.
These instructions fail to include the following sentence from N.C.P.I. 308.45, *483 which is required under both circumstances set forth in §§ 14-51.3(a)(1)-(2) and 14-51.2(b), and states: "Furthermore, the defendant has no duty to retreat in a place where the defendant has a lawful right to be." N.C.P.I. Crim. 308.45. It appears the trial court was under the erroneous impression that the "no duty to retreat" language only applies when the defendant acts in and asserts self-defense while in his home, workplace or motor vehicle pursuant to N.C. Gen. Stat. § 14-51.2(b). While ample evidence was presented to warrant the instruction that Defendant acted in self-defense when he shot Fogg, the jury was not instructed that Defendant was under no duty to retreat under the circumstances presented here.
D. Jury's Confusion over Duty to Retreat
During deliberations, the jury sent a note to the court, which asked for "further explanation on NC law with regard to 'duty to retreat.' " The trial court instructed the jury:
The second question is you asked for further explanation on North Carolina law with regard to quote, duty to retreat. The answer I can give you is that by North Carolina statute, a person has no duty to retreat in one's home, one's own premises, one's place of residence, one's workplace, or one's motor vehicle. This law does not apply in this case . (emphasis supplied)
This instruction was clearly contrary to law. Not only did the initial instructions fail to inform the jury that Defendant statutorily had no duty to retreat under the circumstances set forth in N.C. Gen. Stat. § 14-51.3(a)(1), the further instruction stated the "no duty to retreat" statute "does not apply," and may have required the jury to conclude Defendant would have had a duty to retreat under the circumstances to avoid criminal liability.
E. Prejudice
Defendant argues this error was prejudicial because he was entitled to an instruction that he had no duty to retreat because he was in a "place he ... ha[d] the lawful right to be," see N.C. Gen. Stat. § 14-51.3(a), namely, the grounds of the apartment complex where he lived. Defendant further asserts the record shows it is readily apparent that the jury was confused.
*764 When determining whether a defendant is entitled to an instruction on self-defense, courts must "consider the evidence in the light most favorable to [the] defendant." State v. Withers , 179 N.C.App. 249, 257, 633 S.E.2d 863, 868 (2006) (citation omitted). "It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." State v. Shaw , 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988).
This Court has held in many cases that where competent evidence of self-defense is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature of the case, and the trial judge must give the instruction even absent any specific request by the defendant. It has also been held that where supported by the evidence in a claim of self-defense, an instruction negating defendant's duty to retreat in his home or premises must be given even in the absence of a request by defendant.
State v. Morgan , 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (internal citations omitted) (second and third emphases supplied); see also State v. Davis , 177 N.C.App. 98, 102, 627 S.E.2d 474, 477 (2006) ("A comprehensive self-defense instruction requires instructions that a defendant is under no duty to retreat if the facts warrant it[.]").
In State v. Holloman , --- N.C.App. ----, 786 S.E.2d 328, disc. review allowed , 369 N.C. 38, 794 S.E.2d 317 (2016), the trial court, inter alia , "omitt[ed] a key phrase" and further "compounded its error in reordering a significant portion of the self-defense instruction" in a manner which led this Court to hold that "there [was] a reasonable possibility that, had the jury been properly instructed on self-defense, jurors would not have convicted Defendant of assault." Id. at ----, 786 S.E.2d at 333-34.
Here, the trial court also omitted a key and required phrase from the pattern instructions regarding self-defense, that "the defendant has no duty to retreat in a place where the defendant has a lawful right to be." N.C.P.I. 308.45; N.C. Gen. Stat. § 14-51.3(a)(1)
*484 . The trial court similarly confused the jury by responding to the jury's inquiry and instructing: "[B]y North Carolina statute, a person has no duty to retreat in one's home, one's own premises, one's place of residence, one's workplace, or one's motor vehicle. This law does not apply in this case ." (emphasis supplied).
The court erroneously instructed the jury on both occasions. Under N.C. Gen. Stat. § 14-51.3, "[t]he right not to retreat applies anywhere a person has a lawful right to be , such as a public place; the statute *765 does not require that the person be within a home, workplace, or motor vehicle." John Rubin, The New Law of Self-Defense? The Impact of Statutory Changes in 2011 (School of Government, University of North Carolina at Chapel Hill § V(B) (rev. May 30, 2012)) (emphasis supplied).
Furthermore, the record on appeal contains an unsigned letter written by one of the jurors. The juror wrote to the trial judge after deliberations had begun and expressed his or her concern that Defendant would not receive a fair verdict due to the "bullying and bias that was present in the jury deliberation room." The juror explained that other jurors were discussing the "stand your ground laws" in other states "as examples of reasons we should think one way or another." The juror's letter also described the bargaining that was occurring in the jury room. Statements were made in the jury room that "they are all thugs ... so we will HAVE to convict on something," and "we don't have to agree but will need to compromise on a guilty verdict of some kind." This letter serves to further demonstrate the erroneous jury instruction prejudiced Defendant.
The trial court's jury instructions on Defendant's duty to retreat were an inaccurate and misleading statement of the statutes and case law. Defendant has shown "a reasonable possibility that, had the error in question not been committed, a different result would have been reached." N.C. Gen. Stat. § 15A-1443(a) (2015) ; see, e.g., State v. Ramos , 363 N.C. 352, 355-56, 678 S.E.2d 224, 227 (2009) ("reasonable possibility" of "different result" standard applied to determine that jury instruction was prejudicial and thus reversible). Defendant is entitled to a new trial with proper instructions on self-defense and no duty to retreat.
F. State v. Lee not Precedent
The dissenting opinion recognizes that the trial court misapprehended the law pertaining to the duty to retreat and that the instruction to the jury was contrary to law, but holds this Court is bound by this Court's opinion in State v. Lee , --- N.C.App. ----, 789 S.E.2d 679 (2016), disc. review allowed , --- N.C. ----, 797 S.E.2d 301 (2017).
In Lee , the jury was instructed pursuant to N.C.P.I. 206.10, as agreed upon by the parties, that the defendant "would be not guilty of any murder or manslaughter if [he] acted in self-defense and ... was not the aggressor in provoking the fight and did not use excessive force under the circumstances." Id . at ----, 789 S.E.2d at 685. Like in this case, the court omitted the sentence from the N.C.P.I., which states, "[f]urthermore, the defendant has no duty to retreat in a place where the defendant has a lawful right to be." Id . at ----, 789 S.E.2d at 685.
*766 Unlike the present case, the defendant in Lee did not object to the jury instruction and failed to argue to the trial court that the defendant had no duty to retreat. On appeal, the defendant argued the trial court committed plain error by omitting the sentence that the defendant "has no duty to retreat in a place where the defendant has a lawful right to be," and also argued the trial court was required to give N.C.P.I. 380.10 (defense of home, workplace, motor vehicle).
The Court in Lee recognized N.C. Gen. Stat. § 14-51.3(a)(1), and explained "the right to stand one's ground in 'any public place' [under § 14-51.3(a)(1) ], is conditioned as an initial matter upon whether the defender was justified in the use of self-defense without regard to the physical setting in which the confrontation occurred." Id . at ----, 789 S.E.2d at 686. The Court recognized that the "statutory presumption of reasonableness remains limited to the use of defensive (including deadly) force in defending one's home, motor vehicle, or workplace." Id . at ----, 789 S.E.2d at 686.
*485 This Court held, "[b]ecause Defendant was not within his home or premises, motor vehicle, or workplace, any right to 'stand his ground' stemmed from the two above-described elements of self-defense, and Defendant received instructions to that effect." Id . at ----, 789 S.E.2d at 686. The Court further stated, "Where the evidence is such that a jury could reasonably find a defender was justified in the use of self-defense in any other setting, a no duty to retreat instruction does not change the analysis." Id . at ----, 789 S.E.2d at 687.
Here, unlike in Lee , the record shows Defendant was entitled to the self-defense instruction and the jury was clearly concerned with whether Defendant had a duty to retreat from Fogg prior to using deadly force. Defense counsel specifically requested a no duty to retreat instruction. The trial court initially gave an incomplete instruction under both N.C. Gen. Stat. §§ 14-51.3(a)(1) and 14-51.2(b).
When the jury sought clarification on any duty to retreat by Defendant, the trial court improperly instructed the jury that the law regarding no duty to retreat "does not apply in this case." The erroneous omission from the initial instruction followed by the misstatement of the law in the later instruction could have unfairly required the jury to conclude Defendant had a duty to retreat from Fogg. State v. Lee does not control the outcome of this case and Defendant's right to a new trial is not circumscribed by its holding.
*767 V. Evidence of Fogg's Violent Conduct
Defendant also argues he is entitled to a new trial, because the trial court erred by excluding the testimonies of three character witnesses pertaining to Fogg's past specific instances of violent conduct, and denied his motion to continue when the State produced character evidence pertaining to Fogg's violence the night before trial. We agree.
A. Standard of Review
This Court reviews the trial court's rulings on evidentiary issues for an abuse of discretion. State v. Gettys , --- N.C.App. ----, ----, 777 S.E.2d 351, 355 (2015).
"[I]n criminal cases, ... [w]here a motion to continue is based on a right guaranteed by the federal or state constitutions, ... the ruling of the court is one of law and not of discretion and is reviewable [de novo ] on appeal." State v. Moore , 39 N.C.App. 643, 643, 251 S.E.2d 647, 649 (1979) (citation omitted).
B. Exclusion of Fogg's Specific Acts of Violence
One of several witnesses was prepared to testify to Fogg's specific acts of violence, that Fogg had put a gun to her head, choked her, and threatened to kill her in front of her three-year-old daughter. Fogg also beat her so badly she had blood in her hair, could not stand, and her eyes were swollen shut. Fogg's violence also left his shoe print in the flesh of her back.
Another witness, who was a complete stranger to Fogg, was prepared to testify Fogg encountered him on the street and beat him unconscious. A third witness was prepared to testify Fogg punched Fogg's dog in the face repeatedly when the dog paid attention to the witness. Fogg later threatened that witness's wife and punched the witness when he questioned Fogg about the threat.
The trial court excluded these specific instances of violent conduct, and allowed testimony from the above witnesses that each witness had the "opinion" that Fogg was an aggressive and violent person, and that Fogg had a "reputation" for being aggressive and violent.
"A defendant claiming self-defense may present evidence of the victim's character which tends to show (1) the victim was the aggressor, or (2) the defendant had a reasonable apprehension of death or bodily harm, or both." State v. Brown , 120 N.C.App. 276, 277, 462 S.E.2d 655, 656 (1995) (citing *768 State v. Corn , 307 N.C. 79, 85, 296 S.E.2d 261, 266 (1982) ), disc. review denied , 342 N.C. 896, 467 S.E.2d 906 (1996). "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense , proof may also be made of specific instances of his conduct ." N.C. Gen. Stat. § 8C-1, Rule 405(b) (2015) (emphasis supplied). "[E]vidence of specific instances of a victim's character, known or unknown to *486 the defendant at the time of the crime, may be relevant in establishing that the victim was the aggressor when defendant claims self-defense." State v. Ray , 125 N.C.App. 721, 726, 482 S.E.2d 755, 758 (1997) (citation and quotation marks omitted) (emphasis supplied).
Whether Defendant was the aggressor is an element of self-defense. See State v. Norris, 303 N.C. 526, 530, 279 S.E.2d 570, 572 (1981) (setting forth the elements of self-defense, which includes the element that "defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation").
Under the plain language of Rule 405(b), Defendant was entitled to present evidence of specific acts of Fogg's violent conduct to show that Fogg, not Defendant, was the aggressor at the time of the assault. N.C. Gen. Stat. § 8C-1, Rule 405(b). This right applies whether Fogg's specific instances of conduct were known or unknown to Defendant at the time of the assault, because the evidence pertains and applies to whether Fogg was the aggressor. State v. Watson, 338 N.C. 168, 187, 449 S.E.2d 694, 706 (1994) (overruled on other grounds by State v. Richardson, 341 N.C. 585, 461 S.E.2d 724 (1995) ).
The excluded testimonies of these three witnesses tends to show Fogg had a history not only of violence, but of explosive, unprovoked, and irrational violence, even with strangers. The jury's verdict concluded Defendant had no intent to kill Fogg under two separate charges when he shot him several times.
As shown by the unsigned letter provided to the court during deliberations, the jury heard a juror's impression that there was little difference in the aggressiveness of Fogg and Defendant: "they are all thugs ...we will HAVE to convict on something." The trial court erred by limiting the witnesses' testimonies to exclude specific instances of Fogg's violent conduct, where this evidence was admissible under Rule 405(b) and offered by Defendant to show Fogg was the aggressor in the second altercation at issue here.
The exclusion of evidence of the specific acts of violence by Fogg was prejudicial under N.C. Gen. Stat. § 15A-1443(a), which states in pertinent part:
*769 A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.
(emphasis supplied). Defendant was denied his Constitutional right to present a complete defense. U.S. Const. Amend. VI ; Const. of N.C. Art. I, §§ 18, 23 ; see Holmes v. South Carolina, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).
The State has not shown the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2015) ("A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.") Defendant is entitled to a new trial based upon the suppression and prohibition of this testimony before the jury.
B. Denial of Defendant's Motion to Continue
In a related argument, Defendant asserts the trial court erroneously denied his motion to continue, after the prosecutor provided defense counsel with other reports of Fogg's assaultive behavior on the evening prior to trial. Even if defense counsel had been provided ample opportunity to investigate these reports, in light of the rulings above, it appears the trial court would have improperly excluded any testimony about specific instances of Fogg's aggressive and assaultive conduct to show he was the aggressor.
The trial court committed prejudicial error by limiting the character witnesses' testimonies solely to opinion and reputation evidence. Defendant should have been permitted adequate time to investigate these *487 additional instances of Fogg's violent and explosive conduct in order to adequately prepare his defense.
Defendant was deprived of an opportunity to "make effective use of the evidence" by the trial court's exclusion of the testimony about Fogg's specific acts of violence, and the trial court's denial of his motion to continue. State v. Canady, 355 N.C. 242, 252, 559 S.E.2d 762, 767 (2002).
Evidence of Fogg's aggressive, explosive, and violent nature was crucial substantive evidence to support Defendant's claim of self-defense.
*770 Failure to allow counsel any time to investigate after the State's disclosures, provided the night before trial, further violated Defendant's rights to effective assistance of counsel and to present a complete defense. U.S. Const. Amend. VI ; Const. of N.C. Art. I, §§ 18, 23.
VI. Conclusion
Whether or not Defendant was within the curtilage of his home where the shooting occurred, he was certainly within the common areas of the apartment complex where he lived. It is undisputed that Defendant was in a place where he had a lawful right to be when he shot Fogg. It is also undisputed Defendant made reasonable efforts to avoid further confrontation with the armed Fogg. Evidence was introduced to show Defendant was in imminent fear of his life, based upon the merciless beating Fogg had inflicted upon him two weeks prior.
To be entitled to a "no duty to retreat" instruction, Defendant need only present evidence that he "reasonably believe[d] that such force [was] necessary to prevent imminent death or great bodily harm to himself...." under N.C. Gen. Stat. § 14-51.3(a)(1). The initial jury instructions failed to include the statutory and required "no duty to retreat" instruction. The jury requested further instruction on the law pertaining to "no duty to retreat," and was erroneously instructed that the law pertaining to " 'no duty to retreat' does not apply in this case." The prejudice to Defendant is clear from the record.
The excluded instances of Fogg's violent conduct were also crucial to Defendant's claim of self-defense and are admissible under Rule 405(b). The trial court committed prejudicial error by excluding this evidence, and hindered Defendant's right to present a complete defense. Defendant was further prejudiced by the denial of his motion to continue, where the State presented defense counsel on the eve of trial with additional information regarding specific instances of Fogg's violent conduct.
Defendant is entitled to a new trial with the opportunity conduct a complete investigation and present evidence of specific instances of Fogg's violent and aggressive nature, and proper instructions to the jury on self-defense and no duty to retreat. It is so ordered .
NEW TRIAL.
Judge CALABRIA concurs.
Judge BRYANT dissents by separate opinion.