IN THE SUPREME COURT OF NORTH CAROLINA

No. 208A17

Filed 26 October 2018

STATE OF NORTH CAROLINA

v.

JUSTIN DEANDRE BASS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 802 S.E.2d 477 (2017), awarding defendant a new trial after appeal from a judgment entered on 19 December 2014 by Judge Paul C. Ridgeway in Superior Court, Wake County. Heard in the Supreme Court on 28 August 2018.

*Joshua H. Stein, Attorney General, by Joseph L. Hyde, Assistant Attorney General, for the State-appellant.*

*Lisa Miles for defendant-appellee.*

BEASLEY, Justice.

In this case we consider whether the Court of Appeals erred in holding that the trial court committed prejudicial error by (1) omitting the relevant stand-your-ground language from jury instructions on self-defense, (2) excluding evidence at trial of specific incidents of the victim's violent past conduct, and (3) denying defendant's motion to continue. For the reasons stated below, we hold that the Court of Appeals erred with regard to the second and third issues. Accordingly, we affirm in part and

reverse in part the decision of the Court of Appeals and remand this case for further proceedings.

On 4 July 2014, defendant Justin Deandre Bass and Jerome Fogg, the victim, engaged in a verbal altercation, which escalated to the point that defendant shot Fogg, severely injuring him. The night of the shooting was not defendant's first run-in with Fogg. Defendant and Fogg first met just two weeks before, on 23 June 2014, when Fogg instigated a fight with defendant. Defendant's and Fogg's accounts of the night they first met and the night defendant shot Fogg differ substantially.

### 23 June 2014 – Fogg Beats Defendant

On 23 June 2014, defendant encountered Fogg on the grounds of the Bay Tree Apartments in Raleigh, where defendant lived. According to Fogg, defendant began making disrespectful comments about Fogg. After ignoring the comments for some time, Fogg confronted defendant, who then said that he was, like Fogg, a member of the Piru Blood gang. When Fogg attempted to initiate the Piru handshake with defendant, defendant was unable to perform the correct gestures. Fogg asked defendant additional questions to determine if he was truly a Piru member, and when he was satisfied that defendant's claim was true, taught defendant the handshake. The men went their separate ways for a short time, but according to Fogg, defendant continued to speak about him in a disrespectful manner. When Fogg again confronted defendant, defendant pulled his pants up and raised his hands—gestures that

implied to Fogg that defendant wanted to fight. Fogg obliged by throwing the first punch.

Defendant also testified at trial about the night he first met Fogg. According to defendant, he was celebrating his birthday by drinking vodka in the parking lot of the Bay Tree Apartments when Fogg approached him and demanded that he perform the Piru handshake, which he was unable to do. Fogg left and returned a short time later, again demanding that defendant perform the handshake. When defendant could not, Fogg immediately punched him in the nose. Defendant testified that he never made disrespectful comments or gestures toward Fogg and that he never hit Fogg back. Fogg beat defendant severely, breaking his jaw in three places and landing one blow powerful enough to cause defendant to "fly through the air and roll." Defendant required surgery for his injuries, and his jaw was wired shut for approximately seven weeks, during which he could not speak and was restricted to a liquid diet. After the beating, defendant began carrying a handgun to protect himself from Fogg.

### 4 July 2014 – Defendant Shoots Fogg

On 4 July 2014, two weeks after he was beaten by Fogg, and while his mouth was still wired shut from the incident, defendant was watching fireworks with friends at the Bay Tree Apartments. Defendant testified that at some point after the fireworks ended, he saw Fogg arrive at the apartment complex. Defendant walked to a different part of the complex, hoping to avoid Fogg. Nonetheless, Fogg

approached defendant aggressively, accused him of "talking junk," and taunted him, saying, "I hope you enjoy drinking the Ensure for six weeks." As Fogg approached defendant, defendant saw a large knife on his hip. According to defendant, Fogg told defendant that he "had five minutes to get away from him. And if [defendant] didn't get away from him within five minutes[,] he was going to beat [defendant] up." Defendant attempted to move away, walking from the breezeway where he was standing to a grassy area nearby, but Fogg told him instead to "get on the concrete." Defendant pulled his gun from his pocket and pointed it at Fogg, hoping that he would leave. Fogg asked if defendant intended to shoot him and started reaching for his knife and moving toward defendant. Defendant cocked the gun and began shooting as Fogg advanced. Defendant stopped shooting and ran when he saw Fogg grab his chest and start stumbling. Defendant fled to Virginia for approximately two weeks before returning to North Carolina, where he was arrested.

According to Fogg's testimony, he was at the Bay Tree Apartments visiting friends on 4 July 2014 when defendant approached him and threatened to "pop [Fogg's] mother****ing ass." Fogg testified that he never removed his knife from its holster on his hip. Defendant pulled out the gun and immediately shot Fogg three times. As a result of the shooting, Fogg underwent multiple surgeries and spent a month in the hospital, two weeks of which he was in a coma.

On 9 September 2014, defendant was indicted in Wake County for attempted first-degree murder of Jerome Fogg. A superseding indictment dated 18 November

2014 added a second count of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant pleaded not guilty and gave notice that he intended to pursue a defense of self-defense.

The case was heard during the 10 December 2014 criminal session of Superior Court, Wake County, before Judge Paul C. Ridgeway.[1] At the conclusion of the trial, the jury found defendant not guilty of attempted first-degree murder but convicted him of assault with a deadly weapon inflicting serious injury. That same day, the trial court sentenced defendant, a Level III offender, to a presumptive-range term of thirty to forty-eight months.

Defendant appealed his conviction, and a divided panel of the Court of Appeals found reversible error and granted defendant a new trial based on its decision with respect to three issues: the trial court's denial of defendant's request for certain jury instructions related to the doctrine of self-defense; its exclusion of evidence of specific acts of violence committed by Fogg against individuals other than defendant; and its denial of defendant's motion to continue based on defense counsel's request to investigate new evidence disclosed by the State on the eve of trial. *See State v. Bass*, ___ N.C. App. ___, 802 S.E.2d 477 (2017). The State now appeals the Court of Appeals' decision with respect to each issue on the basis of Judge Bryant's dissent below.

---

[1] Defendant had a co-defendant, Bruce Douglas, who was charged with being an accessory after the fact to attempted first-degree murder because he allegedly assisted defendant in attempting to escape from the scene after the shooting. Douglas was acquitted.

I.

On 24 October 2014, defendant gave notice of his intent to pursue the defense of self-defense, and throughout the trial, presented evidence tending to support his self-defense claim. At the charge conference following the close of evidence, defense counsel requested that the jury charge include language from Pattern Jury Instruction 308.45 providing, in relevant part, that "the [d]efendant has no duty to retreat in a place where the [d]efendant has a lawful right to be. [And] [t]he Defendant would have a lawful right to be in his place of residence." N.C.P.I.–Crim. 308.45 (June 2012) (footnotes, brackets, and parentheses omitted). Believing that the "no duty to retreat" provisions apply only to an individual located in his own home, workplace, or motor vehicle, the trial court concluded the proposed instruction was inapplicable to defendant and declined to deliver it.

After deliberations began, the jury asked for clarification on a defendant's duty to retreat. Outside the presence of the jury, defense counsel again requested that the trial court deliver a "no duty to retreat" instruction, this time pointing to Pattern Jury Instruction 308.10, providing that

> If the defendant was not the aggressor and the defendant was [in the defendant's own home] [on the defendant's own premises] [in the defendant's place of residence] [at the defendant's workplace] [in the defendant's motor vehicle] [at a place the defendant had a lawful right to be], the defendant could stand the defendant's ground and repel force with force regardless of the character of the assault being made upon the defendant. However, the defendant would not be excused if

the defendant used excessive force.

N.C.P.I.–Crim. 308.10 (June 2012) (brackets in original) (footnote omitted). Specifically, defense counsel asked the trial court to deliver the instruction utilizing the bracketed phrase "at a place the defendant had a lawful right to be." Again, the trial court concluded that, because defendant was not in his home or place of residence, workplace, or car, the "no duty to retreat" instruction did not apply. After hearing from counsel, the trial court instructed the jury that "by North Carolina statute, a person has no duty to retreat in one's home, one's own premises, one's place of residence, one's workplace, or one's motor vehicle. This law does not apply in this case."

With regard to this issue, the Court of Appeals held that, based on the plain language of the relevant statutes, the trial court committed reversible error in omitting the "no duty to retreat" language from its instructions. *Bass*, ___ N.C. App. at ___, 802 S.E.2d at 484. The dissent agreed with the majority's statutory construction but felt constrained by a prior Court of Appeals decision to the contrary. *Id.* at ___, 802 S.E.2d at 487 (Bryant, J., dissenting) (citing *State v. Lee*, ___ N.C. App. ___, ___, 789 S.E.2d 679, 686 (2016), *rev'd*, 370 N.C. 671, 811 S.E.2d 563 (2018)). The State argues that the Court of Appeals erred in granting defendant a new trial based on the trial court's omission of no duty to retreat jury instructions.

Two sections of the General Statutes set out circumstances in which an individual will be excused from criminal liability for using deadly force in self-defense.  First, under N.C.G.S. § 14-51.3,

> [a] person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:
>
> > (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
> >
> > (2) Under the circumstances permitted pursuant to [N.C.]G.S. 14-51.2.

N.C.G.S. § 14-51.3(a) (2017).  Second, under N.C.G.S. § 14-51.2,

> (b) The lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
>
> > (1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting to remove another against that person's will from the home, motor vehicle, or workplace.
> >
> > (2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.
>
> . . . .
>
> (f) A lawful occupant within his or her home, motor vehicle, or workplace does not have a duty to retreat from an intruder in the circumstances described in this section.

*Id.* § 14-51.2(b), (f). Both sections provide that individuals using force as described are immune from civil or criminal liability[2] and that such individuals have no duty to retreat before using defensive force. *Id.* §§ 14-51.2(f), -51.3(a). Thus, wherever an individual is lawfully located—whether it is his home, motor vehicle, workplace, or any other place where he has the lawful right to be—the individual may stand his ground and defend himself from attack when he reasonably believes such force is necessary to prevent imminent death or great bodily harm to himself or another.

After the Court of Appeals issued its opinion in the instant case, this Court reversed that court's decision in *Lee*. *See State v. Lee*, 370 N.C. 671, 811 S.E.2d 563 (2018), rev'g ___ N.C. App. at ___, 789 S.E.2d at 686. Thus, neither the trial court below nor the dissenting judge had the benefit of this Court's decision in *Lee* when considering the instant case. In *Lee*, the trial court agreed to deliver the pattern jury instruction on first-degree murder and self-defense, N.C.P.I.–Crim. 206.10, which provides, in relevant part, that "the defendant has no duty to retreat in a place where the defendant has a lawful right to be" and incorporates by reference the pattern instruction on "Self-Defense, Retreat," which states that "[i]f the defendant was not

---

[2] N.C.G.S. §§ 14-51.2(e), -51.3(b) ("A person who uses force as permitted by this section is justified in using such force and is immune from civil or criminal liability for the use of such force, unless the person against whom force was used is a law enforcement officer or bail bondsman who was lawfully acting in the performance of his or her official duties and the officer or bail bondsman identified himself or herself in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer or bail bondsman in the lawful performance of his or her official duties.").

the aggressor and the defendant was . . . [at a place the defendant had a lawful right to be], the defendant could stand the defendant's ground and repel force with force." *Lee*, 370 N.C. at 673, 811 S.E.2d at 565 (first quoting N.C.P.I.–Crim. 206.10 (June 2014), then quoting N.C.P.I.–Crim. 308.10 (June 2012) (second set of brackets in original)). When the trial court charged the jury, however, it omitted the "no duty to retreat" language from its instructions. *Id.* at 673, 811 S.E.2d at 565. This Court concluded that the omission amounted to an "inaccurate and misleading statement of the law," warranting a new trial. *Id.* at 671, 811 S.E.2d at 564.

Based on our opinion in *Lee*, it is clear that a defendant entitled to *any* self-defense instruction is entitled to a *complete* self-defense instruction, which includes the relevant stand-your-ground provision.

The State here does not appear to argue otherwise. Instead, contrary to its implicit concession before the trial court, the State argues that defendant was not entitled to a self-defense instruction at all. *See St.'s Br.* at 27 ("Section 14-51.4 states unequivocally that the justification described in Section 14-51.3 is not available to one who was committing a felony."). Whether defendant was precluded from the protection of the self-defense statutes was not an issue raised by the dissent in the Court of Appeals, nor was it the subject of a petition seeking discretionary review of additional issues. With regard to the jury instructions at issue here, the only question properly before this Court is whether, assuming defendant was entitled to a self-defense instruction, the trial court erred in omitting the relevant stand-your-ground

language. It did. Defendant is entitled to a trial with complete and accurate jury instructions.

## II.

In its next argument, the State argues that the Court of Appeals erred in holding that the trial court should have admitted evidence of specific instances of Fogg's violent conduct for the purpose of proving he was the first aggressor on the night he was shot. We agree.

In his case-in-chief, defendant sought to introduce testimony describing specific instances of violent conduct by Fogg. Specifically, defendant sought to introduce testimony from Candia Williford, Michael Bauman, and Terry Harris about times when they had experienced or witnessed Fogg's violent behavior. The trial court excluded all evidence of specific instances of Fogg's violent conduct, finding them inadmissible at trial under Rule 405(b) of the North Carolina Rules of Evidence. Rather, each witness was allowed to testify only to his or her opinion of Fogg's character for violence and Fogg's reputation in the community.

Evidence of an individual's character is generally inadmissible to prove he "acted in conformity therewith on a particular occasion." N.C.G.S. § 8C-1, Rule 404(a). A criminal defendant may, however, introduce evidence of a victim's pertinent character traits. *Id.*, Rule 404(a)(2).

Whether character evidence is admissible under Rule 404(a)(2) is merely a threshold inquiry, separate from the determination of the *method* by which character may be proved, which is governed by Rule 405. Under Rule 405, character may be demonstrated by evidence of specific instances of conduct only in cases "in which character or a trait of character of a person is an essential element of a charge, claim, or defense." *Id.*, Rule 405(b). Otherwise, character may be proved only "by testimony as to reputation or by testimony in the form of an opinion." *Id.*, Rule 405(a).

To determine whether evidence of specific instances of conduct is admissible, a court must ask whether the character trait is an "essential element." Because this Court has not defined the term "essential element" for purposes of Rule 405(b), we look to secondary sources and decisions of federal courts as instructive.[3] To determine whether character is "an essential element of a charge, claim, or defense," *id.*, Rule 405(b), "courts must ascertain whether a character trait is an 'operative fact'—one that under the substantive law determines rights and liabilities of the parties." 1 Kenneth S. Broun, *McCormick on Evidence* § 187, at 1019-20 (7th ed. 2013). This determination requires the court to ask whether "proof, or failure of proof, of the character trait by itself [would] actually satisfy an element of the charge, claim, or defense." *Id.* at 1020. If it would not, "then character is not essential and evidence should be limited to opinion or reputation." *Id.*

---

[3] *See* N.C.G.S. § 8C-1, Rule 405 commentary ("This [r]ule is identical to Fed. R. Evid. 405 except for the addition of the last sentence to subdivision (a).").

In a case in which the defendant relies on the defense of entrapment, for example, his predisposition to commit the crime of which he is accused has been held to be an essential element. *See, e.g.*, *United States v. Mendoza-Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002) (per curiam) ("The character of the defendant is one of the elements—indeed, it is an essential element—to be considered in determining predisposition."); *accord United States v. Brannan*, 562 F.3d 1300, 1308 (11th Cir. 2009); *United States v. Franco*, 484 F.3d 347, 352 (6th Cir. 2007); *see also* N.C.G.S. § 8C-1, Rule 404 commentary (noting that "[c]haracter may itself be an element of a crime, claim, or defense. A situation of this kind is commonly referred to as 'character in issue,' " such as in an action for negligent entrustment of a motor vehicle, in which the driver's competency is at issue. (quoting Fed. R. Evid. 404(a) advisory comm. n.)).

Although under Rule 404(a)(2), evidence of a violent character is admissible to prove circumstantially that the victim was the aggressor, Rule 405(b) limits the method by which that fact may be proved. To prove he acted in self-defense, a defendant must show that his victim was the aggressor; he need not prove that the victim was a violent or aggressive person. *See State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572 (1981) (listing the elements of self-defense, which include that the "defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation" (citations omitted)); *see also* N.C.G.S. §§ 14-51.2, -51.3. To say that a person is the

aggressor on a specific occasion is not to say that he has a violent character: a generally peaceful person may experience a moment of violence, and a normally aggressive or violent person might refrain from violence on a specific occasion. Because a defendant may prove self-defense without demonstrating his victim's character, character is not an essential element of self-defense. Accordingly, with regard to a claim of self-defense, the victim's character may not be proved by evidence of specific acts.

This Court's opinion in *State v. Watson* does not hold otherwise. 338 N.C. 168, 187, 449 S.E.2d 694, 706 (1994), disavowed in part on other grounds by *State v. Richardson*, 341 N.C. 585, 461 S.E.2d 724, *cert denied*, 514 U.S. 1071 (1995). In *Watson*, the defendant sought to elicit testimony regarding a witness's opinion of the victim's character for violence. *Id.* at 186-87, 449 S.E.2d at 705-06. We held that, "[b]ecause the jury was instructed on self-defense and was required to determine who was the aggressor in the affray, it was error for the trial court not to permit the jury to hear evidence regarding the victim's violent character." *Id.* at 188, 449 S.E.2d at 706. Because *Watson* dealt only with opinion evidence—not evidence of specific acts— it sheds little light on the issue presented here.

Here, the excluded evidence consisted of specific incidents of violence committed by Fogg. Williford, Fogg's ex-girlfriend, would have testified that Fogg had, without provocation and in front of Williford's three-year-old daughter, pulled a gun on Williford and choked her until she passed out. She also would have testified

that Fogg beat her so badly that her eyes were swollen shut and she was left with a bruise reflecting an imprint of Fogg's shoe on her back. Michael Bauman would have testified that, on one occasion, he witnessed Fogg punch his own dog in the face because it approached another individual for attention. On another occasion, Bauman encountered Fogg at a restaurant, where Fogg initiated a fight with Bauman and also "grabbed" and "threw" Bauman's mother-in-law when she attempted to defuse the situation. Terry Harris would have testified that Fogg, a complete stranger to him, initiated a verbal altercation with him in a convenience store. Two or three weeks later, Fogg pulled over when he saw Harris walking on the side of the road and hit him until Harris was knocked unconscious. According to Harris, Fogg "[s]plit the side of [his] face" such that he required stitches.

Because Rule 405 limits the use of specific instances of past conduct to cases in which character is an essential element of the charge, claim, or defense, the trial court correctly excluded testimony regarding these specific prior acts of violence by Fogg.[4]

---

[4] Our holding today is not only dictated by the plain language of Rule 405, but is also consistent with federal circuit court decisions, which are instructive on the issue. *See, e.g.*, *United States v. Bordeaux*, 570 F.3d 1041, 1050-51 (8th Cir. 2009) (holding that, because a victim's violent character is not an essential element of self-defense, the victim's character could not be demonstrated by evidence of specific violent acts so that such evidence was not admissible under Rule 405(b)); *United States v. Jackson*, 549 F.3d 963, 975-76 (5th Cir. 2008) (holding that a victim's prison records showing specific instances of violence were inadmissible under Rule 405(b) to prove he was the first aggressor), *cert. denied*, 558 U.S. 828 (2009); *United States v. Bautista*, 145 F.3d 1140, 1152 (10th Cir.) (holding that evidence of a victim's aggressive character to prove he was the aggressor must consist of reputation or opinion evidence only), *cert. denied*, 525 U.S. 911 (1998); *Palmquist v. Selvik*, 111 F.3d 1332,

III.

Finally, the State argues that the trial court did not err in denying defendant's motion to continue. We agree.

On the eve of trial, the State received information related to five incidents of assaultive behavior by Fogg, each of which was previously unknown to either the prosecutor or defense counsel. The State immediately relayed the information to defense counsel, who moved for a continuance to further investigate the information. The trial court denied the motion and proceeded to trial.

Because defendant's motion to continue was for the purpose of further developing evidence that would have been inadmissible at trial, the trial court properly denied that motion.

## *Conclusion*

We hold that the trial court committed reversible error in omitting the relevant stand your ground language from the jury instructions delivered at trial; accordingly, we affirm that part of the Court of Appeals' decision holding that defendant is entitled

---

1341 (7th Cir. 1997) (holding that, because evidence showing an individual had a "death wish" and desired to commit "suicide by police" was character evidence that did not speak to an essential element of a law enforcement officer's self-defense claim, the evidence could be presented only in the form of reputation or opinion); *United States v. Keiser*, 57 F.3d 847, 857 (9th Cir.) (holding that evidence of specific instances of violence by the victim that tended to demonstrate his violent character were inadmissible to prove that he was the aggressor in an affray), *cert. denied*, 516 U.S. 1029 (1995); *Virgin Islands v. Carino*, 631 F.2d 226, 229 (3d Cir. 1980) (holding that the trial court properly excluded evidence of a victim's prior conviction of manslaughter to demonstrate that the victim was likely the aggressor in a physical altercation with the defendant).

to a new trial on that basis. and remand this case for further proceedings not inconsistent with this opinion. Because we conclude that the trial court did not err in excluding specific instances of Fogg's violent conduct or in denying defendant's motion to continue, we reverse the decision below with regard to those issues. This case is remanded to the Court of Appeals for further remand to the trial court for proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED; NEW TRIAL.