IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-60

No. COA20-805

Filed 1 February 2022

Durham County, No. 16 CRS 60307

STATE OF NORTH CAROLINA

v.

DAVID MCKOY

Appeal by defendant from judgment entered 22 March 2019 by Judge John M. Dunlow in Durham County Superior Court. Heard in the Court of Appeals 3 November 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General M. Lynne Weaver, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for defendant-appellant.*

ZACHARY, Judge.

Defendant David McKoy appeals from a judgment entered upon a jury's verdict finding him guilty of voluntary manslaughter. On appeal, Defendant challenges the trial court's exclusion of evidence found on the cell phone of the victim, Augustus Brandon. After careful review, we conclude that Defendant received a fair trial, free from prejudicial error.

## Background

The testimony offered at Defendant's trial revealed that Defendant and

Augustus Brandon had an acrimonious relationship. They had known each other since they were in sixth grade, and they had many mutual acquaintances. However, Defendant "tried to avoid" Mr. Brandon because Defendant "knew [Mr. Brandon and his friends] to rob people" and "to gang bang and to tote guns[.]" After one of Mr. Brandon's friends "robbed [Defendant's friend] at gunpoint for [a] fake chain," Defendant purchased a semi-automatic rifle for the purposes of self-defense. Defendant kept this firearm in the back seat of his car because his mother would not allow him to keep it in the house.

¶ 3 Defendant testified that on the morning of 9 December 2016, he was waiting to turn left onto Hamlin Road when he saw Mr. Brandon drive past him. According to Defendant, as Mr. Brandon drove by, he "turn[ed] his head . . . like he had spotted [Defendant]."

¶ 4 Defendant turned onto Hamlin Road behind Mr. Brandon, who pulled off the road and then merged back onto it so that he was following Defendant. Defendant tried unsuccessfully to lose Mr. Brandon by turning onto Old Oxford Road. Mr. Brandon then passed Defendant, maneuvered his vehicle in front of Defendant's, and abruptly came to a complete stop in the roadway. When Mr. Brandon exited his car and started approaching Defendant's car, Defendant put his car in reverse and accidentally backed into a side ditch, where his vehicle got stuck. Mr. Brandon then turned his car around, drove nearer to Defendant's car, got back out of the car, and

began approaching Defendant.

¶ 5    Defendant explained that at the time he "was terrified" because he believed that Mr. Brandon was going to shoot him; he stated, "I just panicked. I just panicked." Although he did not see Mr. Brandon brandish a gun, Defendant "was in fear for [his] life[,]" so he fired his semi-automatic rifle. Defendant believed that Mr. Brandon had returned fire, so he continued shooting. Defendant fired his weapon three times, hitting Mr. Brandon once in the middle of the back and once in the back of the head. The head wound was fatal.

¶ 6    By the time law enforcement officers arrived at the scene, Mr. Brandon was dead. He was unarmed.

¶ 7    That day, law enforcement officers arrested Defendant for the murder of Mr. Brandon. On 17 January 2017, a Durham County grand jury returned an indictment formally charging Defendant with the murder of Augustus Brandon. From the outset, Defendant consistently maintained that he acted in self-defense against Mr. Brandon.

¶ 8    This matter came on for trial in Durham County Superior Court on 11 March 2019. Three eyewitnesses to the shooting testified on behalf of the State. Two of the witnesses reported that they had heard approximately three gunshots on 9 December 2016, while the third stated that he heard six to seven shots. One witness testified that Mr. Brandon was running away when Defendant shot him, with the force of the

shots "launch[ing]" his body into the roadside ditch.

¶ 9   Mr. Brandon's mother, Angela Clark, also testified for the State. She said that a few days before the shooting, Mr. Brandon admitted to her that he had previously been in possession of a gun, but he had recently been robbed and the gun was taken from him. "He just kept asking" Mrs. Clark if she could help him get another, telling her, "I need it for protection, because they're going to kill me."

¶ 10   During the jury charge, the trial court delivered instructions on first-degree murder, second-degree murder, and voluntary manslaughter. With regard to voluntary manslaughter, the court instructed the jury, in relevant part:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally wounded the victim with a deadly weapon and thereby proximately caused the victim's death and that the defendant used excessive force, it would be your duty to find the defendant guilty of voluntary manslaughter, even if the [S]tate has failed to prove that the defendant did not act in self-defense.

¶ 11   On 22 March 2019, the jury returned its verdict finding Defendant guilty of voluntary manslaughter. The trial court entered judgment upon the jury's verdict and sentenced Defendant to a term of 64 to 89 months in the custody of the North Carolina Division of Adult Correction. Defendant gave notice of appeal in open court.

## *Discussion*

I.   *Exclusion of Evidence*

¶ 12          During trial, the State filed a motion in limine to suppress Defendant's anticipated introduction of (1) text messages on Mr. Brandon's cell phone in which he arranged to commit violent acts and discussed owning and using guns, and (2) photographs on Mr. Brandon's cell phone of him and others holding guns. The State asserted that such evidence would be more prejudicial than probative because specific acts of conduct are impermissible to prove a victim's propensity for violence, and because such evidence could suggest that Mr. Brandon "had a violent character." The State also argued that the evidence was inadmissible because Defendant did not know about the texts or photographs at the time of the shooting. Defense counsel argued that although Defendant did not learn of the texts and photographs until discovery, Mr. Brandon's "parents . . . [w]ere going to talk about their son," and therefore the cell-phone evidence was necessary "to paint the whole picture." The defense further argued that the State "opened the door" to challenges to Mr. Brandon's character because his parents testified that he "was always a happy guy."

¶ 13          In addition, defense counsel conducted a voir dire examination of Darius Clark, Mr. Brandon's father, during which Mr. Clark denied knowing anything about his son owning or using guns. To impeach Mr. Clark's testimony, Defendant's counsel sought to question him about a recorded interaction between the Clarks and the lead detective, Christin Reimann, in which they reviewed together the contents of Mr. Brandon's cell phone.

¶ 14      The trial court granted the State's motion in limine, explaining, "This is [the State]'s case in chief, . . . so any question relative to the contents of that phone and text messages that may or may not have been contained on that phone is not allowed." The trial court permitted Defendant "to ask questions relating to whether [Mr. Clark] knew that the victim had a gun" because he "had previously testified that [Mr. Brandon] did not have a gun, [and] there were no guns allowed in his house"; the court also allowed defense counsel to question Mr. Clark about the fact of his encounter with Detective Reimann, during which she showed Mr. Clark and his wife the contents of Mr. Brandon's cell phone. However, the trial court instructed Defendant that he could not ask Mr. Clark "specific questions about th[e] contents" of the cell phone for the purposes of impeachment. The court later sustained the State's objections when Defendant asked Mr. Clark and Detective Reimann about the contents of Mr. Brandon's cell phone.

## II.    *Standard of Review*

¶ 15      On appeal, Defendant argues that the trial court erred in excluding the specific content discovered on Mr. Brandon's cell phone. Specifically, Defendant contends that the issue is whether the State "opened the door" to admission of the cell-phone evidence to refute the portrayal of Mr. Brandon in his parents' testimony, and to impeach Mr. Clark's testimony that he did not previously know that his son had once possessed a gun or been robbed. Defendant asserts that this is a question of law,

reviewable de novo on appeal.[1]

---

[1] Defendant contends that "[w]hether a party opened the door to the admission of particular evidence by the opposing party is a question of law," which is reviewable de novo on appeal. For support, Defendant cites *State v. Jefferies*, 333 N.C. 501, 511, 428 S.E.2d 150, 155 (1993); however, such reliance on *Jefferies* is misplaced. First, although the standard of review in *Jefferies* was not explicitly stated, nowhere in the opinion did our Supreme Court suggest de novo review. *See id.* Indeed, among the cases cited in *Jefferies* is *State v. Brown*, in which our Supreme Court affirmed this Court's application of the abuse of discretion standard when determining whether the trial court erred in concluding that the defendant had "opened the door" to evidence of his prior bad acts. 310 N.C. 563, 571–73, 313 S.E.2d 585, 590–91 (1984).

Defendant's reliance on *Jefferies* is further unwarranted because the facts here are not analogous to those in *Jefferies*. In *Jefferies*, the defendant sought to question a detective on cross-examination specifically about the detective's testimony for the State that charges had also been filed against the defendant's alleged co-conspirator. 333 N.C. at 511, 428 S.E.2d at 155. The State offered the detective's testimony to support its theory that the men had acted in concert; accordingly, on cross-examination, the defendant hoped to rebut this evidence by eliciting testimony that the charges against his co-conspirator had been dismissed. *Id.* However, the trial court did not allow the defendant to question the detective regarding the dismissed charges, and it excluded from evidence documents showing that the charges had been dismissed. *Id.* On appeal, our Supreme Court stated the well-established rule that "[w]hen a party introduces evidence favorable to its case, the other party has the right to introduce evidence to explain or rebut such evidence, although the latter evidence would be inadmissible had it been offered initially." *Id.* The Court explained that "[a]ssuming the evidence which the defendant attempted to introduce would have been inadmissible if offered originally, it became admissible when the State's witness testified on this subject. It was error to exclude this evidence." *Id.* The Court nonetheless concluded that the error was harmless, reasoning that there was no "reasonable possibility" that a different result would have been reached at trial even if the error had not occurred. *Id.* at 511–12, 428 S.E.2d at 155–56.

Here, Defendant attempted to introduce the evidence on Mr. Brandon's cell phone to rebut Mr. Clark's claimed ignorance about his son's use of guns and his statement that Mr. Brandon "was always a happy guy." Unlike in *Jefferies*—where the defendant's proffered evidence regarding the dismissed charges would have provided relevant context to help "explain or rebut" the State's potentially unfavorable evidence concerning a co-conspirator, *id.* at 511, 428 S.E.2d at 155—here, Mr. Clark's knowledge of his son's prior possession of guns and his characterization of Mr. Brandon's overall demeanor are not directly related to Mr. Brandon's alleged propensity for violence.

Accordingly, Defendant's contention that *Jefferies* mandates de novo review of this issue lacks merit.

¶ 16        However, the record indicates otherwise. The State argued that the cell-phone evidence would impermissibly suggest—through specific acts of which Defendant only learned after the fact—that Mr. Brandon possessed "a violent character." Based on this argument, the trial court decided that Defendant could ask Mr. Clark general "[q]uestion[s] about whether or not [Detective] Reimann showed him and his wife the contents of Mr. Brandon's cell phone, but not specific questions about those contents[.]" In doing so, the court engaged in the evidentiary balancing test prescribed by Rule 403 of the North Carolina Rules of Evidence. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2021) ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .").

¶ 17        Accordingly, the ultimate question on appeal is whether the trial court abused its discretion by excluding the cell-phone evidence, not whether the State "opened the door" to evidence of Mr. Brandon's allegedly violent character.

¶ 18        A motion in limine "can be made in order to prevent the jury from ever hearing the potentially prejudicial evidence thus obviating the necessity for an instruction during trial to disregard that evidence if it comes in and is prejudicial." *State v. Tate*, 300 N.C. 180, 182, 265 S.E.2d 223, 225 (1980). "The decision of whether to grant [a motion in limine] rests in the sound discretion of the trial judge." *State v. Hightower*, 340 N.C. 735, 746–47, 459 S.E.2d 739, 745 (1995). Additionally, "[w]e review a trial

court's decision to exclude evidence under Rule 403 for abuse of discretion." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008).

¶ 19        "An abuse of discretion results when the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Triplett*, 368 N.C. 172, 178, 775 S.E.2d 805, 809 (2015) (citation and internal quotation marks omitted). "In our review, we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record." *Id.* (citation and internal quotation marks omitted).

¶ 20        "[E]videntiary error does not necessitate a new trial unless the erroneous admission was prejudicial. The same rule applies to exclusion of evidence." *State v. Jacobs*, 363 N.C. 815, 825, 689 S.E.2d 859, 865 (2010) (citations and internal quotation marks omitted). A defendant is prejudiced by evidentiary error "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *Id.* (quoting N.C. Gen. Stat. § 15A-1443(a)). "Defendant bears the burden of showing prejudice." *Id.* at 825, 689 S.E.2d at 866.

III.    *Analysis*

¶ 21        Here, Defendant contends that "[i]t was error for the trial court to bar any evidence of what [Mr. Brandon] kept on his cell phone to rebut the misleading picture

presented to the jury by the State." Defendant further asserts that he was prejudiced

by the exclusion of this evidence because:

> [i]f the jury had been allowed to hear that [Mr.] Brandon
> was not a person who only briefly had access to a gun and,
> instead, was a person who had possession of guns on
> multiple occasions when under no threat of harm, it would
> have been reasonable for the jury to conclude that the State
> had failed to prove beyond a reasonable doubt that
> [Defendant] used more force [than] reasonably necessary
> to repel [Mr.] Brandon's lethal attack on him.

¶ 22        Assuming, *arguendo,* that the cell-phone evidence was excluded in error, such

error was not sufficiently prejudicial to warrant a new trial. Defendant has not shown

"a reasonable possibility that, had the error in question not been committed, a

different result would have been reached at the trial out of which the appeal arises."

*Id.* at 825, 689 S.E.2d at 865.

¶ 23        In the instant case, the trial court admitted substantial evidence supporting

Defendant's theory of self-defense. Defendant testified that Mr. Brandon and his

friends had a reputation for "rob[bing] people," "gang bang[ing,] and . . . tot[ing]

guns"; that Mr. Brandon had once "randomly showed [Defendant] a video of [Mr.

Brandon] shooting a gun[,]" an experience that made Defendant feel "confused and

uncomfortable"; that Defendant "was terrified" and "in fear for [his] life" at the time

of the shooting; and that he thought he heard more than three gunshots, as one of the

eyewitnesses also testified. Additionally, Mrs. Clark testified that a few days before

the shooting, her son had admitted that he had previously had a gun, but it had been stolen, and he needed assistance obtaining another. A challenge to Mr. Clark's credibility with the texts and photographs on Mr. Brandon's cell phone, therefore, would not have meaningfully bolstered Defendant's self-defense claim.

¶ 24    Furthermore, the evidence tended to show that Defendant was honestly in fear for his life, but that the degree of force he used was unreasonable, as Mr. Brandon was unarmed and running away from Defendant when he was killed. The trial court's instruction on voluntary manslaughter allowed the jury to convict Defendant upon a finding of imperfect self-defense. As Defendant concedes, the guilty verdict suggests "that the jury concluded that [Defendant] had a reasonable fear that he was facing an imminent threat of death or great bodily injury from [Mr.] Brandon at the time of the shooting, but that the State had proven beyond a reasonable doubt that he used more force than necessary."

¶ 25    Moreover, as Defendant acknowledges, he testified at trial that he never saw Mr. Brandon holding or handling a gun on 9 December 2016; nevertheless, he contends that, had the trial court not erroneously excluded the evidence discovered on Mr. Brandon's cell phone, "there is more than a reasonable possibility that the jury would have reached a verdict other than guilty of voluntary manslaughter." Defendant's argument is unavailing.

¶ 26    The only additional evidence Defendant proffers in support of his argument on

appeal is his own testimony that "he heard gunshots in addition to the three he fired and believed [Mr.] Brandon had fired at him." However, as noted above, the jury heard and considered this testimony, as well as that of an eyewitness who similarly recalled hearing more than the three gunshots reported by two other testifying eyewitnesses. The jury, as fact-finder in this matter, weighed all of the evidence and, presented with four possible verdicts, found Defendant guilty of the lowest-level offense. Even assuming, *arguendo*, that the relevant evidence was erroneously excluded, we are not persuaded that the challenged evidentiary ruling affected the outcome at trial. Accordingly, Defendant has not shown "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *Id.*

¶ 27        For these reasons, we conclude that Defendant received a fair trial, free from prejudicial error.

NO PREJUDICIAL ERROR.

Judge ARROWOOD concurs.

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

¶ 28    David McKoy ("Defendant") appeals from a judgment entered upon a jury's verdict finding him guilty of voluntary manslaughter. Defendant challenges the trial court's limitation on his cross-examination of the State's witnesses and the exclusion of evidence and images found on the cell phone of the deceased, Augustus Brandon ("Brandon"). Defendant is entitled to a new trial. I respectfully dissent.

¶ 29    The jury concluded the State had failed to carry its burden to show premeditation and deliberation, and acquitted Defendant of both first-degree and second-degree murder. The jury also rejected Defendant acted with malice and accepted Defendant's evidence of self-defense to rebut the presumption of malice arising from his use of deadly force. *See State v. Reynolds*, 307 N.C. 184, 192, 297 S.E.2d 532, 537 (1982) ("In the instant case the state offered evidence sufficient to permit a jury to find beyond a reasonable doubt that defendant intentionally used a deadly weapon, a pistol, to cause the death of the deceased. There is no evidence of mitigation which might reduce the crime to manslaughter nor is there any evidence which would justify or excuse the killing. Under these circumstances the state has proved murder in the second degree because malice and unlawfulness are implied in law.").

## I.    Reasonable Use of Force

¶ 30    The sole issue remaining for the jury was whether Defendant's use of deadly force in self-defense was reasonable. The burden of proof rests upon the State and

the evidence is reviewed in the light most favorable to Defendant, as it appeared to him at the time of the incident. *See State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) ("When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense . . . , courts must consider the evidence in the light most favorable to [the] defendant." ) (citations omitted).

## A. Opening the Door

¶ 31      Defendant asserts prejudicial error in the exclusion of evidence favorable to him and argues the State "opened the door" to the admission of the photos and texts after the detective's and Brandon's parents' testimonies on direct examination. "'Opening the door' is the principle where one party introduces evidence of a particular fact and the opposing party may introduce evidence to explain or rebut it, even though the rebuttal evidence would be incompetent or irrelevant, if offered initially." *State v. Thaggard*, 168 N.C. App. 263, 273, 608 S.E.2d 774, 782 (2005) (citation omitted).

¶ 32      Defendant asserts he is entitled to introduce evidence to explain or rebut evidence or assertions presented by the State. *See State v. Jefferies*, 333 N.C. 501, 511, 428 S.E.2d 150, 155 (1993) ("When a party introduces evidence favorable to its case, the other party has the right to introduce evidence to explain or rebut such evidence, although the latter evidence would be inadmissible had it been offered initially."); *see State v. Albert,* 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981) ("Under

such circumstances, the law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the [opposing party]. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, *even though such latter evidence would be incompetent or irrelevant had it been offered initially*.") (emphasis supplied) (citation omitted).

¶ 33      The State opened the door through the detective's and Brandon's parents' testimonies that asserted Brandon's (1) lack of possession and use of guns; (2) no involvement in gang activities; (3) reputation for peacefulness; and, (4) being characterized as "always a happy guy."

## B. Right to Present a Defense

¶ 34      Defendant further argues the trial court's denial of cross-examination and inability to introduce evidence is a constitutional violation and impacts his due process right to present a defense:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as *an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony,* he has the right to present his own witnesses to establish a defense. *This right is a fundamental element of due process of law.*

*Washington v. Texas,* 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023 (1967) (emphasis supplied).

¶ 35          When a defendant asserts the defense of self-defense, he is entitled for the trial court and jury to view the evidence "in the light most favorable to the defendant." *State v. Moore*, 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010). In the light most favorable to Defendant, the evidence tended to show Defendant had been bullied and threatened by Brandon prior to the shooting. Defendant was followed and cornered by Brandon on a roadway. Brandon got out of the car and approached Defendant. Defendant testified he thought he was being threatened and ducked down, while backing his car away from Brandon and into a ditch. Defendant testified Brandon had been shooting at him and he had heard gun shots. This evidence was corroborated by other witnesses.

¶ 36          Defendant testified he was afraid when Brandon went back towards his car. Brandon pulled his car over to Defendant and Defendant shot at Brandon through his own car window. Defendant crouched behind his car and fired additional shots. Defendant himself called 911 and surrendered to police. Defendant has no prior criminal record.

¶ 37          Defendant attempted to introduce evidence of Brandon's reputation for violence, as corroborated by violent and graphic gang and gun images of Brandon that he had stored on his cell phone. Defendant also sought to cross-examine and use the

phone images to rebut Brandon's parents, Mr. and Mrs. Clark's, claimed ignorance about their son's possession and use of guns, his gang activity, and their assertion of Brandon's reputation for peacefulness and that he "was always a happy guy."

¶ 38        The State objected. On the next day of court, the State filed motion *in limine* to prevent use of these texts and images citing *State v. Bass*, 371 N.C. 535, 819 S.E.2d 322 (2018). After a *voir dire* hearing, the trial court granted the State's motion. The trial court sustained the State's objections when defense counsel attempted to cross-examine Brandon's father about a photo showing Brandon holding firearms, after the father had denied his son had ever possessed a gun.

¶ 39        Later, Detective Riemann testified for the State and mentioned she had gone through the contents of Brandon's phone. Detective Riemann testified she did not recall all the photos she may have looked at on the phone. Defense counsel attempted to cross-examine the detective regarding images and the phone's contents. The trial court sustained the State's objection.

¶ 40        While North Carolina's courts recognize and protect the right to wide-ranging cross examination, "the defendant's right to cross-examination is not absolute. The testimony which defendant sought to elicit must be relevant to some defense or relevant to impeach the witness." *State v. Guthrie*, 110 N.C. App. 91, 93, 428 S.E.2d 853, 854 (citation omitted), *rev. denied*, 333 N.C. 793, 431 S.E.2d 28 (1993).

¶ 41        The State never addresses the issue on appeal of whether it opened the door to admit this testimony, does not address the constitutional implications of Defendant's right to present a defense or his knowledge Brandon was violent and known to carry a gun.  Even though the State relied upon *State v. Bass* at the trial court for the basis of its motion *in limine,* the State does not cite *Bass* to support its arguments on appeal.

### C. State v. Bass

¶ 42        Our Supreme Court's holding in *Bass* does not control the outcome this case. In *Bass*, the court found no error where the defendant was denied the opportunity to offer witnesses testifying to past violent acts of the victim.  *Bass*, 371 N.C. at 545, 819 S.E.2d at 328.  Here, Defendant argues the State opened the door regarding the contents and images stored on Brandon's phone and by the State's witnesses affirmatively asserting Brandon's good character.  Defendant asserts the denial of his right to cross-examine and present evidence to support the reasonableness of his actions denied him his due process right to present a defense.  *Bass* does not address specific acts or corroborating evidence offered to impeach the State's witnesses' testimony about a victim's character for violence.

¶ 43        Here, the jury had already acquitted Defendant on first and second-degree murder.  Defendant's evidence rebutted the presumption of malice arising from the use of a deadly weapon.  *Reynolds*, 307 N.C. at 192, 297 S.E.2d at 537.

¶ 44       The sole remaining question for the jury was whether the Defendant's use of

deadly force was reasonable, as reviewed in the light most favorable to Defendant

under the facts as appeared to him at the time.  The burden rested upon the State to

show it was not.

¶ 45       Defendant's apprehension and belief at the time of the incident determines the

degree of force necessary to use for self-defense.  *See State v. Bush*, 307 N.C. 152, 160,

297 S.E.2d 563, 569 (1982).  The evidence is certainly relevant and corroborative of

Brandon's reputation for violence, gang involvement use of guns, and as

impeachment of Brandon's father's testimony asserting Brandon's peaceful

character.

¶ 46       Defendant had testified he was followed and cornered by Brandon, who

abruptly pulled in front of his vehicle and came to a dead stop in the roadway.

Defendant testified he heard gun shots and believed Brandon had been shooting at

him.  Brandon got out of the car and approached Defendant, who felt threatened and

backed up his vehicle into a ditch.  Brandon pulled his car over to Defendant and got

out. Defendant shot at Brandon from inside his own car window.  Defendant testified

he was afraid and believed Brandon went back towards his car to further arm himself.

## II.    Conclusion

¶ 47       Defendant was convicted of voluntary manslaughter for imperfect self-defense

because the jury found his degree of force was unreasonable.  The impeachment

evidence goes towards Defendant's state of mind and reasonableness of fear during the incident. There is a reasonable possibility if this evidence and testimony had not been excluded, and this error not been committed at trial, a different result may have been reached by the jury, in light of their acquittals on the murder charges and rejection of presumed malice. *See* N.C. Gen. Stat. § 15A-1443(a) (2021).

¶ 48 The trial court's limitations on cross-examination and exclusion of corroborating evidence, after the State had opened the door, unlawfully eased the State's burdens of proof and to overcome self-defense. Defendant was prejudiced in his defense and is entitled to a new trial. I respectfully dissent.